**TRAILER TRAIN CO., Railgon Co., Railbox Co., Appellees,**

v.

**STATE TAX COMMISSION, Director of Department of Revenue, Appellants.**

No. 89–2943.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 9, 1991.

Decided April 9, 1991.

Rehearing and Rehearing En Banc Denied May 30, 1991.

Gary L. Gardner, Jefferson City, Mo., for appellants.

James W. McBride, Washington, D.C., for appellees.

Before JOHN R. GIBSON and BOWMAN, Circuit Judges, and FLOYD R. GIBSON, Senior Circuit Judge.

BOWMAN, Circuit Judge.

This case requires us to decide whether a special tax imposed by the state of Missouri on rentals derived from the leasing of railroad cars violates federal law prohibiting state taxes that discriminate against

railroads. The plaintiff freight-line companies filed their complaint in the District Court[1] against the State Tax Commission of Missouri and the Director of the Department of Revenue of the State of Missouri,[2] alleging that Missouri's Private Car Tax, Mo.Rev.Stat. Ch. 152 (1986), violates Section 306(1)(d) of the Railroad Revitalization and Regulatory Reform Act of 1976, Pub.L. No. 94–210, 90 Stat. 31, codified at 49 U.S.C. § 11503 (1988) ("the 4–R Act"). The District Court granted the plaintiffs' motion for summary judgment and permanently enjoined the state from assessing, levying, or collecting any taxes pursuant to the Private Car Tax. The state appeals. We affirm.

Section 306 of the 4–R Act states in relevant part that "[i]t is unlawful for a State ... to commit any of the following prohibited acts ... (d) The imposition of any other tax which results in discriminatory treatment of a common carrier by railroad subject to this part."[3] 90 Stat. at 54. Section 306 thus forbids all taxes that discriminate against railroads (not just discriminatory property taxes) and covers the plaintiffs in this case, who are engaged in the business of leasing railroad cars to railroads that use the leased cars in their interstate operations. *See Trailer Train v. Bair*, 765 F.2d 744, 745 (8th Cir.), *cert. denied*, 474 U.S. 1021, 106 S.Ct. 572, 88 L.Ed.2d 556 (1985).[4] The issue before us is whether the Private Car Tax, which applies only to freight line companies such as the plaintiffs, Mo.Rev.Stat. §§ 152.010–152.030, violates the 4–R Act's prohibition against "any other tax which results in discriminatory treatment."[5]

The state argues that Section 306 requires a finding of actual discriminatory effect, because only those taxes that "result" in discriminatory treatment are prohibited. To determine whether the Private Car Tax brings about such a result, the state contends, the District Court should have conducted an in-depth examination of Missouri's complete tax structure as it applies to the plaintiffs and to other businesses; if the Private Car Tax is in essence an equivalent (or, as detailed analysis might reveal, an even less burdensome) substitute for another tax of general applicability, then it does not violate Section 306.

This argument, however, runs contrary to both Supreme Court and Eighth Circuit precedent. In *Arizona Pub. Serv. Co. v. Snead*, 441 U.S. 141, 99 S.Ct. 1629, 60 L.Ed.2d 106 (1979), the Supreme Court dealt with the issue of whether a New Mexico state tax on electricity, which in effect applied only to electricity generated in New Mexico and sold out of state, violated a federal statute prohibiting taxes on electricity that were discriminatory against out-of-state consumers. *Snead*, 441 U.S. at 143–47, 99 S.Ct. at 1631–33. The federal statute defined a discriminatory tax as one that "results, either directly or indirectly, in a greater tax burden on electricity which is generated and transmitted in interstate commerce than on electricity which is generated and transmitted in intrastate commerce." *Id.* at 146, 99 S.Ct. at 1632 (citation omitted). The state argued that an examination of New Mexico's entire tax structure was required to determine whether or not the electricity tax violated the federal statute. *Id.* at 149, 99 S.Ct. at

---

**1.** The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri.

**2.** In this opinion we refer to the defendants collectively as "the state."

**3.** We use the language of Section 306, even though its codified version at 49 U.S.C. § 11503 is different. *See Trailer Train Co. v. Leuenberger*, 885 F.2d 415, 416 n. 2 (8th Cir.1988), *cert. denied*, 490 U.S. 1066, 109 S.Ct. 2065, 104 L.Ed.2d 630 (1989); *Ogilvie v. State Bd. of Equalization*, 657 F.2d 204, 206 n. 1 (8th Cir.),

*cert. denied*, 454 U.S. 1086, 102 S.Ct. 644, 70 L.Ed.2d 621 (1981). For a more complete discussion of Section 306 and its legislative history, *see Ogilvie*, 657 F.2d at 206–08.

**4.** The state does not contest the proposition that the plaintiffs, as lessors of railroad cars, are protected by the 4–R Act.

**5.** The Private Car Tax requires freight line companies to pay a tax "equal to three percent of the total amount received for [railroad] car rentals by the freight line companies." Mo.Rev.Stat. § 152.030.

1633. The Supreme Court rejected this argument, saying

> the federal statutory provision is directed specifically at a state tax "on or with respect to the generation or transmission of electricity," not to the entire tax structure of the State. The tax imposed by New Mexico[ ] ... is concededly a tax on the generation of electricity.... To look narrowly to the type of tax the federal statute names, rather than to consider the entire tax structure of the State, is to be faithful not only to the language of that statute but also to the expressed intent of Congress in enacting it. Because the ... tax *itself* indirectly but necessarily discriminates against electricity sold outside New Mexico, it violates that federal statute.

*Id.* at 149–50, 99 S.Ct. at 1634 (emphasis in original).

In *Ogilvie v. State Bd. of Equalization,* 657 F.2d 204 (8th Cir.), *cert. denied,* 454 U.S. 1086, 102 S.Ct. 644, 70 L.Ed.2d 621 (1981), the state of North Dakota argued that its tax system was equitable and not violative of Section 306 because the higher property tax imposed upon railroads was offset by a business privilege tax that other businesses were required to pay and railroads were not. *Ogilvie,* 657 F.2d at 207–10. We first quoted with approval the conclusion of the district court that " '[t]he most obvious form of tax discrimination is to impose a tax on a class of rail transportation property that is not imposed on other nonrailroad property of the same class.' " *Id.* at 210. The Court then went on to state that "North Dakota's rationalization that they have an equitable tax system because of a business privilege tax is nothing more than an attempt to resurrect ... an exemption from § 306 for states with a 'reasonable classification of property.'

Congress did not accept the proposal and this court will not accept it." *Id.*

We are bound by the reasoning of *Snead* and *Ogilvie.* The Private Car Tax is imposed solely on freight line companies, who are among the intended beneficiaries of the protection granted by the 4–R Act. Although Section 306 prohibits only taxes that "result" in discriminatory treatment, a tax that applies only to one class of businesses necessarily discriminates against that class; under the 4–R Act it is not within our discretion to analyze the disputed tax in the context of Missouri's overall tax structure. *Snead,* 441 U.S. at 150, 99 S.Ct. at 1634, *Ogilvie,* 657 F.2d at 210. "The 4–R Act ... is a prophylactic rule to prevent tax discrimination. It forbids some fair arrangements because the actual fairness of those arrangements is too difficult and expensive to evaluate." *Kansas City Southern Ry. v. McNamara,* 817 F.2d 368, 375 (5th Cir.1987). "[T]he categorical language of the 4–R Act demands bright-line rules for simple judicial administration." *Id.* at 378.[6]

The state challenges the holding of the District Court on two additional grounds. First, it argues that because some of the proceeds of the Private Car Tax are used to benefit railroads, the tax is not violative of the 4–R Act. This argument is without merit, as the use of the proceeds of a tax has no bearing on the question of whether the tax is discriminatory. Second, the state challenges the holding of the District Court on the grounds of comity. This issue is raised for the first time on appeal. We therefore decline to consider it. *See Kelley v. Crunk,* 713 F.2d 426, 427 (8th Cir.1983).[7]

We conclude that the District Court correctly held that Missouri's Private Car Tax violates Section 306 of the 4–R Act and we

6. "It may be that in an appropriate case we would allow the state to save a facially discriminatory tax by showing that it is *necessary* to 'compensate' for some state or local tax ... that for some reason *cannot* be levied against the railroads." *Kansas City Southern,* 817 F.2d at 376 (emphasis in original). The state does not allege, however, that the Private Car Tax is a substitute for a generally applicable tax that is impossible to levy against lessors of railroad cars.

7. In any event, this argument is foreclosed by our holding in *Burlington Northern R.R. v. James,* 911 F.2d 1297, 1300 (8th Cir.1990) ("The common law principle of federal deference to state tax schemes ... has no place in a § 306 analysis.").

affirm its order permanently enjoining the state from assessing, levying, or collecting any taxes pursuant to the Private Car Tax.

FLOYD R. GIBSON, Senior Circuit Judge, dissenting.

Because I do not believe that Missouri's Private Car Tax has been shown to result in discriminatory treatment in violation of Section 306(1)(d), I respectfully dissent.

I do not fault the majority for following the precedents of this and other courts of appeal, but I simply cannot in good conscience participate in the judicial extension of legislation to an absurd end. Congress' effort to save the railroads by enactment of the 4–R Act prohibits discriminatory taxation of railroads. The law was originally focused at unfair taxation of railroad property.[8] The concluding catchall provision invoked in this case—306(1)(d)—has been extended to have the practical effect of prohibiting virtually any taxation of railroads. Perhaps this was the result Congress hoped to achieve, but the language of subsection (d) does not go that far. I do not deny Congress' authority to fully prohibit taxation of the railroads, but I am unwilling to believe that it exercised that authority with this less-than absolute statute. As I read the law, it only prohibits a tax which results in discriminatory treatment.

Of course, "[t]he meaning of 'discrimination' presents a somewhat stickier problem," *McNamara*, 817 F.2d at 374, but I think we should meet the challenge head on. Simply saying that "because a tax applies to railroads and no other taxpayer, then the tax is discriminatory" is insufficient analysis. Subsection (d) prohibits taxes that result in discriminatory treatment. We cannot gauge that result by only look-ing at how the railroad is treated. Examination of other taxpayers and other tax schemes will be necessary to make a comparison. Discrimination can neither exist nor be discovered without a comparison between two allegedly different treatments; looking only to the treatment of the railroads reveals discrimination by virtue of having singled them out in the first instance as much as by the actual presence of a discriminatory tax.

Thus, I disagree with the majority on the proper method for determining when a tax "results in discriminatory treatment." Relying on *Snead*, the majority denies that we may look beyond the state tax in question to gauge its resultant treatment of railroads. I believe we must look beyond the single tax statute, and I do not find the majority's citation to *Snead* for the contrary proposition to be authoritative or persuasive.[9]

The federal statutory scheme in *Snead* was designed to prevent a " 'tax on or with respect to the generation or transmission of electricity' which 'results, either directly or indirectly, in a *greater tax burden* on electricity' consumed outside of New Mexico than that consumed in the State." *Snead*, 441 U.S. at 149, 99 S.Ct. at 1634 (emphasis added). The federal prohibition here is designed to prevent a tax that "results in discriminatory treatment" of railroads. While violations of the former prohibition may be found by the examination of the isolated tax statute, violations of the latter prohibition cannot be so readily established.

In *Snead*, the Court said that looking only to the type of tax involved without comparison to other New Mexico taxes was sufficient. "Because the electrical energy tax *itself* indirectly but necessarily discriminates against electricity sold outside New

---

8. On this point, I recommend the entire opinion of Judge Gee in *McNamara* be read, beyond the scant bit quoted by the majority at its footnote six and accompanying text. Particularly, I point out that *McNamara* confesses the truth of what this court does here and in earlier opinions by taking the catchall provision to its (il)logical end. *See McNamara*, 817 F.2d at 372–73 and n. 8.

9. I also find the majority's citation to *Ogilvie* unhelpful. Though we there declined to look to the overall tax schemes of North Dakota, we were examining a specific violation of § 306(1)(a), dealing with property taxes in particular. In this case we are dealing with the broader language of subsection (d). *Ogilvie* does not prevent a likewise broader examination of Missouri's tax laws to discern a discriminatory result against railroads.

Mexico, it violates the federal statute." *Id.* at 150, 99 S.Ct. at 1634 (footnote omitted) (emphasis in original). The violation, of course, was that a greater tax burden resulted. Gauging that burden on electricity could be done by looking to the statute alone because the prohibition dealt with the taxation of electricity alone. The determination was only whether the out-of-state taxation was unequal to the in-state burden—either the tax law made the burdens equal or it did not. The resulting unequal burdens on the taxed electricity violated the federal law.

Would that our inquiry was so easily made. I believe that subsection (d) of the 4-R Act as written requires a qualitatively different judgment by the courts to determine whether a tax results in discriminatory treatment which cannot be made by looking at the subject tax singularly. The law and analysis in *Snead* looked to *what* was taxed, while our analysis under 4-R's subsection (d) is more properly focused on *who* is taxed. In the statute considered in *Snead*, Congress was concerned with what was taxed by requiring that the burden on the taxed commodity be equal in and out of New Mexico. With the 4-R Act, Congress is worried not about what is taxed, but that the tax (whatever its burdens) not result in discriminatory treatment of who is taxed, *viz.*, a railroad taxpayer subject to the tax.

Admittedly, a tax on only railroad cars such as Missouri's Private Car Tax is immediately suspect, but not necessarily discriminatory. A myopic review of any tax law will reveal that one party is treated differently from another. Does a sales tax result in discriminatory treatment of landowners who must also pay real estate taxes while non-landowners pay only the sales tax? Does the exemption for churches from real property taxation result in discriminatory treatment of railroads who cannot get an exemption? I can think of almost no viable tax scheme which would not leave the railroads treated differently from some other taxpayer when the tax is examined in isolation. Perhaps there are no longer any taxes that can survive 4-R,

and perhaps states will have to restructure their entire tax laws should they endeavor to successfully tax railroads. I do not believe that Congress by the 4-R Act has yet demanded such results.

I cannot join the court's opinion because I do not believe Congress has broadly eliminated taxation of the railroads without a demonstration of a discriminatory result by comparison to other taxes and taxpayers under subsection (d). I believe such a demonstration is still necessary lest Congress be openly called a fool.[10] I would remand to the trial court to consider whether the tax in question is actually discriminatory considered in conjunction with other state tax provisions. I would employ an analysis like that set forth in *McNamara,* 817 F.2d at 376, despite the absence of the Commerce Clause issue:

> Any state tax scheme is prima facie valid, and the Commerce Clause will "of its own force" invalidate state laws only when the taxpayer can show that the laws will actually operate in a discriminatory fashion. *See Maryland v. Louisiana,* 451 U.S. 725, 756 [101 S.Ct. 2114, 2134, 68 L.Ed.2d 576] (1981) ("A state tax must be assessed in light of its actual effect considered in conjunction with other provisions of the State's tax scheme.").

---

10. *See McNamara,* 817 F.2d at n. 8 (quoting Judge Warriner in *Richmond, Fredericksburg & Potomac Railroad v. Dept. of Taxation,* 591 F.Supp. 209, 221 (E.D.Va.1984), *rev'd,* 762 F.2d 375 (4th Cir.1985).