BURLINGTON NORTHERN RAILROAD
COMPANY, Relator,

v.

COMMISSIONER OF REVENUE,
Respondent.

No. C0–93–466.

Supreme Court of Minnesota.

Dec. 17, 1993.

Sue Ann Nelson, Tracy M. Smith, Minneapolis, James W. McBride, Anne M. Stolee, Washington, DC, for relator.

Hubert H. Humphrey, III, Atty. Gen., Thomas M. O'Hern, Jr., Barry R. Greller, Sp. Asst. Attys. Gen., St. Paul, for respondent.

SIMONETT, Justice.

We conclude that Minnesota's transaction-based sales and use tax as applied to railroad rolling stock and repair parts violates the federal law against discriminatory taxation of railroads. We reverse the contrary ruling of the Tax Court.

Federal law provides:

The following acts unreasonably burden and discriminate against interstate commerce, and a State * * * may not do any of them:

> *     *     *     *     *     *

(4) impose another tax that discriminates against a rail carrier * * *.

49 U.S.C. § 11503(b) (1988), known as Section 306 of the Railroad Revitalization and Regulatory Reform Act of 1976, Pub.L. 94–210, 90 Stat. 54, and commonly referred to as Section 306 of the 4–R Act.

Congress enacted the 4–R Act to revitalize the fading railroad industry and improve rail service to the public. To this end Congress included Section 306 to remedy discriminatory taxation against railroads. *See Ogilvie v. State Board of Equalization*, 657 F.2d 204,

207–10 (8th Cir.), *cert. denied,* 454 U.S. 1086, 102 S.Ct. 644, 70 L.Ed.2d 621 (1981). Other subparagraphs of Section 306 prohibit discriminatory ad valorem taxes; subparagraph (d), with which we are here concerned, covers other kinds of taxes, including sales and use taxes.

At all times relevant to this case, Minnesota has had (and has) a general sales and use tax imposed on transactions in Minnesota, *i.e.,* on sales at retail and on the use and storage of personal property in the state. *See* Minn.Stat. §§ 297A.02, 297A.14 (1992). This taxation scheme is described as a transaction-based tax. Prior to 1980, railroads in this state were subject to a gross earnings tax "in lieu of" all other taxes. Minn.Stat. § 295.02 (1978) (repealed). In recognition of this "in lieu of" status for railroads, the chapter on sales and use taxes, Chapter 297A, contained an "exemption section," eventually known as Minn.Stat. § 297A.25, subd. 13 (1986), which expressly exempted gross receipts from sales of railroad rolling stock from the state's sales and use tax.[1]

In 1979, after Congress had enacted the 4–R Act, Minnesota repealed its gross earnings tax on railroads, but left undisturbed and intact section 297A.25, subd. 13 which, as noted, exempted railroad rolling stock from any sales and use taxes.

In 1987, the state legislature, as part of the Omnibus Tax Bill, ch. 268, art. 4, §§ 11, 25, 1987 Minn.Laws 1190, 1198, repealed section 297A.25, subd. 13 and enacted a sales and use tax on railroad rolling stock based on an apportionment formula. *See* Minn.Stat. § 297A.212 (Supp.1987) (effective June 1, 1987). It is the validity of this statute, which was amended the following year to revise the apportionment formula, that is at issue in this case.

In the 1987 version of section 297A.212,[2] that part of a railroad's purchase of rolling stock subject to Minnesota's tax was determined by applying the ratio of the carrier's intrastate to interstate mileage to "purchases of rolling stock that are used in this state." In 1988 the legislature amended the formula, retroactive to June 1, 1987, by applying the ratio to a broader base: "purchases of rolling stock used within and without this state." Minn.Stat. § 297A.212 (1988).[3] "Rolling stock," as used in section 297A.212 (and as used in this opinion), includes repair and maintenance parts.

Burlington Northern Railroad Company (BN) is an interstate common carrier by rail with operations in Minnesota. Based on the 1987 apportionment formula of section 297A.212, the relator railroad paid state sales and use taxes on its rolling stock and repair parts of $197,783.29 for the period June 1, 1987, through July 31, 1988. Following the 1988 formula revision, the state audited BN, and as a result the Commissioner of Revenue issued an order on May 24, 1990, assessing, for the same period, additional sales and use taxes on BN's rolling stock in the amount of $832,299.80.

1. Minn.Stat. § 297A.25, subd. 13 (1986), stated: "The gross receipts from sales of rolling stock and the storage, use or other consumption of such property by railroads, freight line companies, sleeping car companies and express companies taxed on the gross earnings basis in lieu of ad valorem taxes are exempt [from Minnesota sales and use taxation]."

2. Minn.Stat. § 297A.212 (Supp.1987) became effective on June 1, 1987, and subjected railroad rolling stock to sales and use taxation by apportioning a railroad's purchases of rolling stock to Minnesota in the following manner: "The ratio of intrastate mileage to interstate or foreign mileage traveled by the carrier during the previous fiscal year of the carrier must be determined at the close of the carrier's fiscal year. The ratio must be applied each month to the purchase price of total purchases of rolling stock that are

used in this state by the railroad to establish that portion of the total used and consumed in intrastate movement and subject to tax under this chapter."

3. The new 1988 formula stated: "The tax must be computed using the ratio of revenue ton miles of passengers, mail, express, and freight carried by the railroad within this state to the total number of revenue ton miles carried by the railroad within and without this state. This ratio must be determined at the close of the carrier's previous fiscal year. This ratio must be applied each month to the total amount of purchases of rolling stock used *within and without* this state by the railroad to establish that portion of the total used and consumed in intrastate movement and subject to tax under this chapter." (Emphasis added).

Burlington Northern commenced this case in the Tax Court. It contends that the sales and use tax is discriminatory and illegal under federal law, that it does not owe any sales and use taxes, and that it is entitled to a refund of taxes already paid.

The case was submitted to the Tax Court on stipulated facts. On the railroad's motion for summary judgment, Judge Roemer ruled: (1) that the apportionment-based sales and use tax under section 297A.212 discriminates against Burlington Northern and is in violation of Section 306; and (2) that the carrier's sales and use tax liability should be recomputed on a transaction basis in accordance with Minn.Stat. ch. 297A and in the same manner as for other commercial and industrial taxpayers. The commissioner does not appeal the Tax Court's first ruling, but BN does appeal to us, by certiorari, the court's second ruling. In other words, BN contends its rolling stock and repair parts should be completely exempt from any sales and use taxation.

Burlington Northern raises two issues. Based on rules of statutory construction, BN argues that the legislature did not intend section 297A.25, subd. 13 (1986), which exempted railroads from the sales and use tax, to be repealed if the apportionment-based sales and use tax should be declared illegal under federal law. We need not consider the convolutions of this statutory severance argument as we think the second issue raised by BN is dispositive.

■ The second issue is simply this: If the transaction-based sales and use tax on purchases does apply to railroad rolling stock and repair parts, does that tax discriminate against railroads in violation of federal law?

The Commissioner says this issue was not argued below and, therefore, should not be considered here. But as BN points out, while the argument below focused on the validity of section 297A.212, the thrust of the argument was that imposing any sales and use taxes on BN's rolling stock would be in violation of Section 306. Hence the issue here is not a new one.

To be discriminatory, a tax must be discriminatory as compared to someone else.

The Commissioner argues that the proper comparison class should be other commercial and industrial taxpayers in general. Burlington Northern, on the other hand, argues that the comparison should be with its transportation competitors. In support of his position, the Commissioner cites *Burlington Northern Railroad v. City of Superior,* 932 F.2d 1185 (7th Cir.1991), and *Kansas City Southern Railway v. McNamara,* 817 F.2d 368 (5th Cir.1987). Neither of these two cases, however, deals with the situation where the railroad is subject to a general tax but its competitors are not.

It seems to us that *National Railroad Passenger Corp. v. State Board of Equalization,* 652 F.Supp. 923 (N.D.Cal.1986) (the *Amtrak* case), represents the proper approach. There, railroad passenger cars were taxed under a general tax "on the storage, use or other consumption in California of tangible personal property purchased outside the state." *Id.* at 925. Commercial passenger aircraft, commercial passenger watercraft, and rail freight cars were all exempt from the tax. The federal district court held that the tax violated Section 306 because it applied to passenger rail cars and not to other passenger vehicles used by common carriers in interstate commerce. In other words, the court used the railroad's competitors as the comparison class. We think we should do so here too. This approach is in keeping with the purpose of the 4–R Act: to revitalize the railroad industry by making it competitive.

■ Burlington Northern's competitors are trucks, barges, and, to some extent, airlines. BN argues the transaction-based sales and use tax, which the Tax Court now says should be imposed, is discriminatory because airlines and barges pay no sales and use tax on repair and maintenance parts. As for truckers, the trucking industry has its own taxation scheme under which interstate companies can choose to pay on a pro rata basis, *see* Minn.Stat. § 168.187 (1992), thereby paying taxes on only a portion of repair parts, so that truckers receive more favorable treatment on their purchase and use of repair and maintenance parts than do railroads. Furthermore, it appears the tax revenues collect-

ed from truckers go to improve the roads that the truckers use, to their benefit, while the sales and use taxes collected from railroads go into the general fund. In *Burlington Northern Railroad v. Triplett,* 682 F.Supp. 443 (D.Minn.1988), the federal district court held that a fuel tax that applied to cars, trucks, barges and railroads nevertheless discriminated against railroads because the revenue from the tax on cars and trucks was spent only on improving Minnesota highways, while the fuel tax paid by railroads went into the state's general fund, leaving the railroads to pay for maintenance of their tracks. In other words, the use to which the collected tax revenues are put bears on whether or not the tax has a discriminatory effect on railroads. *See also Atchison, T. & S.F. Ry. v. Bair,* 338 N.W.2d 338 (Iowa 1983), *cert. denied,* 465 U.S. 1071, 104 S.Ct. 1427, 79 L.Ed.2d 751 (1984).

The Commissioner argues that, overall, rail carriers are treated no worse than motor carriers. Thus, it is pointed out that motor carrier companies must pay an annual license fee, and BN is able to buy rolling stock in other jurisdictions tax free. This kind of overall fairness argument has, however, been rejected by the courts. As the Fifth Circuit noted in *McNamara,* 817 F.2d at 377, the focus of Section 306 is on the particular taxing entity and the particular taxes involved, and "[t]here is nothing in the statute that even suggests that an individually discriminatory tax should be assessed for fairness against the entire tax structure of the state." It is enough, therefore, for purposes of Section 306, to show the tax is facially discriminatory. *Id.; see also National Railroad,* 652 F.Supp. at 927 (§ 306 "does not require a showing of actual or quantifiable competition among the taxed entities").

We hold that the exemptions for barges and airplanes, as well as the alternative tax scheme for motor vehicles, make application of Minnesota's general sales and use tax to railroad rolling stock and repair parts discriminatory and illegal under Section 306 of the 4–R Act. Burlington Northern is enti-

tled to a refund of taxes paid for June 1, 1987, through July 31, 1988, with interest.

Reversed.