**BURLINGTON NORTHERN RAILROAD COMPANY,**
Respondent,

v.

**COMMISSIONER OF REVENUE,**
Relator.

No. C1–99–537.

Supreme Court of Minnesota.

Feb. 3, 2000.

Mike Hatch, Atty. Gen., Thomas K. Overton, St. Paul, for relator.

Sue Ann Nelson, Oppenheimer Wolff & Donnelly, Mpls., James W. McBride, Anne M. Stolee, Baker, Donelson, Bearman & Caldwell, P.C., Washington, D.C., for respondent.

## OPINION

BLATZ, Chief Justice.

The Commissioner of Revenue (Commissioner) appeals from a tax court decision

granting summary judgment to Burlington Northern Railroad Company (BN) on its claim for a refund of sales and use taxes paid to the State of Minnesota on transportation fuel purchases. The tax court used a "competitive mode" comparison class consisting of rail carriers, motor carriers, air carriers, and barges to find that the state sales and use tax on rail carrier fuel is discriminatory. The tax court reasoned that the use of petroleum excise tax revenues to maintain public highways and airports resulted in discriminatory taxation of rail carriers who must pay not only a tax on fuel, but also must pay to maintain their rights of way. While we agree with the tax court that the proper comparison class is a competitive mode, we conclude that the expenditure of tax revenues is not relevant to a determination of whether the sales and use tax on rail carrier fuel is discriminatory. Therefore, because both rail carriers and barges are subject to the sales and use tax on fuel, and motor carriers pay a considerably greater, although different, tax on fuel, we hold that the sales and use tax as applied to the fuel used by rail carriers is not discriminatory, and we reverse.

BN,[1] a rail carrier engaged in interstate commerce, brought this action under the Railroad Revitalization and Regulatory Reform Act of 1976 (the "4–R Act") §306, 49 U.S.C. § 11501 (Supp. III 1997)[2]. The 4–R Act was enacted to "rehabilitate and improve the railway system in the United States" and includes provisions on regulatory reform and rehabilitation, as well as improvement financing. *See id.* The Act also includes § 11501(b), which is a section designed to curb discriminatory state taxation of railroad property.[3] *See Burlington N. R.R. Co. v. Commissioner of Revenue,* 509 N.W.2d 551, 551 (Minn.1993) (hereinafter *BN (Minnesota)* ). Subsections (b)(1–3) of that provision prohibit higher assessment ratios or tax rates on rail transportation property as compared to "other commercial and industrial property." *See Department of Revenue v. ACF Indus., Inc.,* 510 U.S. 332, 337, 114 S.Ct. 843, 127 L.Ed.2d 165 (1994). By comparison, subsection (b)(4) forbids any other "tax that discriminates." *See id.* Because this statute places limitations on state sovereignty by restricting the power of taxation, it is interpreted narrowly. *See id.* at 345, 114 S.Ct. 843 ("We will interpret a statute to pre-empt the traditional state powers only if that result is 'the clear and manifest purpose of Congress.' ").

BN's challenge centers on the State of Minnesota's taxation of transportation fuel and thus arises under subsection (b)(4). In Minnesota, fuel is subject to either a petroleum excise tax or a sales and use tax. *See* Minn.Stat. §§ 296A.07, 296A.09, 297A.02, 297A.14 (1998). Rail carriers and barges pay a 6.5% sales and use tax on fuel, but do not pay petroleum excise taxes. The sales and use tax revenues paid

1. By merger agreement effective December 31, 1996, Burlington Northern Santa Fe Railway Company is the successor in interest to BN.

2. Section 306 was previously codified at 49 U.S.C. § 11503 (1994).

3. The relevant part of 49 U.S.C. § 11501 provides:

(b) The following acts unreasonably burden and discriminate against interstate commerce, and a State, subdivision of a State, or authority acting for a State or subdivision of a State may not do any of them:

(1) Assess rail transportation property at a value that has a higher ratio to the true market value of the rail transportation property than the ratio that the assessed value of other commercial and industrial property in the same assessment jurisdiction has to the true market value of the other commercial and industrial property.

(2) Levy or collect a tax on an assessment that may not be made under paragraph (1) of this subsection.

(3) Levy or collect an ad valorem property tax on rail transportation property at a tax rate that exceeds the tax rate applicable to commercial and industrial property in the same assessment jurisdiction.

(4) Impose another tax that discriminates against a rail carrier * * *.

49 U.S.C. § 11501(b) (Supp. III 1997).

by rail carriers and barges are deposited in the state's general fund. *See* Minn.Stat. § 297A.44, subd. 1(a) (1998).

By comparison, motor carriers and air carriers pay petroleum excise taxes rather than sales and use taxes on transportation fuel. Most fuel purchased and used by motor carriers is subject to a 20 cents per gallon petroleum excise tax. *See* Minn. Stat. § 296A.07, subd. 3(3) (1998). The petroleum excise taxes paid by motor carriers are deposited in a fund dedicated to highway maintenance and construction. *See* Minn. Const. art. XIV, § 10. Air carriers pay an excise tax between ½ and 5 cents per gallon of fuel, depending on the amount purchased per year. *See* Minn. Stat. §§ 296A.09, subd. 1; 296A.17 (1998). These taxes are earmarked for airport maintenance and construction, as well as other public projects addressing issues of concern to air carriers such as weather programs. *See* Minn.Stat. § 296A.18, subd. 8 (1998).

In April 1995, BN filed a claim for a refund with the Commissioner for taxes paid from September 1991 through February 1995, asserting that the imposition of sales and use taxes on BN's purchase and use of fuel for transportation services was discriminatory and in violation of 49 U.S.C. § 11501(b)(4). During this period, BN paid sales and use taxes of 2.6 to 4.2 cents per gallon of fuel,[4] totaling $4,956,424.84. The Commissioner denied BN's claim two weeks later. In October 1996, BN commenced an action in district court seeking a refund of sales and use taxes paid on diesel fuel purchases for September through November of 1991 (District Court Action). BN also filed an administrative protest with the Department of Revenue Appeals Office for taxes paid on fuel purchases from December 1991 to February 1995. The Appeals Office denied BN's administrative protest, and BN appealed to the tax court on January 17, 1997 (Tax Court Action). The District Court Action

was transferred to the tax court and consolidated with the Tax Court Action in May 1997. In October 1998, the Commissioner and BN filed cross motions in tax court for summary judgment on stipulated facts.

BN argued in its summary judgment motion that under *BN (Minnesota)*, the comparison class for BN's tax challenge should consist of only the transportation competitors: rail carriers, motor carriers, air carriers, and barges. In addition, BN claimed that the use of petroleum excise tax revenues to maintain the public rights of way used by its competitors resulted in discriminatory taxation of rail carriers because they own, construct, and maintain their own rights of way without the benefit of excise tax revenues.

In contrast, the Commissioner argued that the rail carriers should be compared to all other "commercial and industrial taxpayers" subject to the state sales and use tax to determine whether the tax is unfair. The Commissioner based his argument for this comparison class on the United States Supreme Court's decision in *ACF Industries*, claiming that this decision silently overruled *BN (Minnesota)*. The Commissioner also argued that the 4–R Act limits state taxation, but not state expenditures of tax revenues for public purposes.

After a hearing and submission of memoranda and supporting documents, the tax court granted BN's motion for summary judgment. *See Burlington N. R.R. Co. v. Commissioner of Revenue*, 1999 WL 39499, at *1 (Minn. Tax Ct. Jan. 26, 1999) (hereinafter *BN (Tax 1999)* ). The tax court determined that *ACF Industries* did not overrule *BN (Minnesota)*, and concluded that the proper comparison class is the railroad's transportation competitors. *See BN (Tax 1999)*, 1999 WL 39499, at *2.

The tax court then turned to the issue of whether the sales and use tax as applied to transportation fuel is discriminatory. *See*

---

4. BN reported to the Minnesota Department of Revenue that it paid a taxable purchase

price for diesel fuel of 40.61 to 64.11 cents per gallon during the period at issue.

*id.* at *3. The court concluded that the tax places rail carriers at a direct competitive disadvantage because rail carriers, unlike their competitors, "are not only required to pay sales and use tax on fuel used in providing transportation services, but they must also own, build, maintain and pay taxes on their transportation rights-of-way." *Id.* The Commissioner appeals from this decision.

## I.

▮ On appeal from summary judgment, we must determine "whether there are any genuine issues of material fact and whether the lower court erred in its application of the law." *Brookfield Trade Ctr., Inc. v. County of Ramsey,* 584 N.W.2d 390, 392–93 (Minn.1998). This case is before us on stipulated facts, so we are only faced with a question of law. Conclusions of law, including the interpretation of statutes, are reviewed by this court de novo. *See id.* at 393.

▮ "To be discriminatory, a tax must be discriminatory as compared to someone else." *BN (Minnesota),* 509 N.W.2d at 553. Thus, we must first determine the proper comparison class to use to evaluate the sales and use tax imposed on rail carriers' fuel. In *BN (Minnesota),* a very similar controversy between the same parties, we used a "competitive mode" comparison class consisting of rail carriers, barges, air carriers, and motor carriers. *See id.* at 553. We determined that the competitive mode comparison "is in keeping with the purpose of the 4–R Act: to revitalize the railroad industry by making it competitive." *Id.*

The Commissioner again urges this court, as he did in *BN (Minnesota),* to use a comparison class consisting of all commercial and industrial taxpayers subject to the state sales and use tax. The Commissioner claims that after our decision in *BN (Minnesota),* the United States Supreme Court established the commercial and industrial class as the comparison group to use for challenges under section 11501(b)(4). Accordingly, the Commissioner contends that *BN (Minnesota)* has been overruled sub silentio by *ACF Industries.*

In *ACF Industries,* the State of Oregon imposed an ad valorem tax on all real and personal property including railroad cars, but exempted certain classes of property such as agricultural machinery, livestock, agricultural products, standing timber, and motor vehicles. *See ACF Indus.,* 510 U.S. at 335, 114 S.Ct. 843. ACF Industries claimed the tax was discriminatory because it exempted some classes of commercial and industrial property but taxed railroad cars in full. *See id.* at 337, 114 S.Ct. 843. Thus, the issue facing the Supreme Court was whether an ad valorem tax imposed generally on commercial and industrial property could nonetheless be discriminatory as to rail carriers and in violation of subsection (b)(4) because some, but not all, other classes of commercial and industrial property were exempted. *See id.*

The Supreme Court held that section 11501 "does not limit the States' discretion to exempt nonrailroad property, but not railroad property, from ad valorem property taxes of general application." *Id.* at 347–48, 114 S.Ct. 843. The Court first reasoned that " 'commercial and industrial property' excludes property that is exempt" because it is defined as "property * * * devoted to a commercial or industrial use and subject to a property tax levy." *Id.* at 340, 342, 114 S.Ct. 843. Therefore, by definition exempted property – property not subject to a tax levy – is not a part of the "commercial and industrial property" comparison class. *See id.* at 342, 114 S.Ct. 843. Accordingly, the rail carriers could not challenge property tax exemptions under subsections (b)(1–3) which provide for comparison only to "other commercial and industrial property." *See id.*

The Supreme Court then concluded that when viewing section 11501 "as a whole," subsection (b)(4) could not be interpreted to prohibit property tax exemptions when

the other subsections allowed them. *See id.* at 343, 114 S.Ct. 843. To do so "would contravene the 'elementary canon of construction that a statute should be interpreted so as not to render one part inoperative.'" *Id.* at 340, 114 S.Ct. 843. The Court further supported its decision by noting that Congress drafted the statute at a time when property tax exemptions were common and important to the states. *See id.* at 344, 114 S.Ct. 843. Thus, Congress' silence on the topic "reflects a determination to permit the States to leave their exemptions in place." *Id.* The Court also stated that "[p]rinciples of federalism" led to this result. *Id.* at 345, 114 S.Ct. 843 ("When determining the breadth of a federal statute that impinges upon or preempts the States' traditional powers, we are hesitant to extend the statute beyond its evident scope.").

We recognize that had *ACF Industries* directly decided the issue of what comparison class must be used, that decision would be binding on this court. *See Glover v. Minneapolis Bldg. Trades Council,* 215 Minn. 533, 539, 10 N.W.2d 481, 484 (1943). However, because we are not persuaded that the Supreme Court addressed this particular issue in *ACF Industries,* we conclude that *ACF Industries* does not overrule our decision in *BN (Minnesota)* to use a competitive mode comparison class for a subsection (b)(4) tax challenge. The Court focused its analysis on whether *exemptions* from a generally applicable *ad valorem property tax* were prohibited by section 11501(b). *See ACF Indus.,* 510 U.S. at 347–48, 114 S.Ct. 843. The issue was not whether a "commercial and industrial" or "competitive mode" comparison class should be used under subsection (b)(4). *See id.* at 338–39, 347–48, 114 S.Ct. 843. Instead, the Court's decision turned on its interpretation of the phrase "commercial and industrial property" found in subsections (b)(1–3). *See id.* at 340, 114 S.Ct. 843. Further, the Court's discussion of this language was limited to the issue before it and depended on whether exempt property was included in the definition of "commercial and industrial property." *See id.* at 342, 114 S.Ct. 843.

The Commissioner cites to four other federal decisions in support of his position that *ACF Industries* is controlling in this case. These cases do not convince us to use the commercial and industrial comparison class. Two of the cited cases involved exemptions from ad valorem taxes for some commercial and industrial property but not rail carrier property, and therefore, *ACF Industries* was directly on point. *See Burlington N. R.R. Co. v. Huddleston,* 94 F.3d 1413, 1414 (10th Cir.1996); *Burlington N. R.R. Co. v. Wisconsin Dep't of Revenue,* 59 F.3d 55, 57 (7th Cir.1995). Like *ACF Industries,* these cases did not address the comparison class issue for subsection (b)(4) challenges to non-property taxes.

The other two cases the Commissioner cites to support his argument did involve challenges to non-property taxes. *See Atchison, Topeka & Santa Fe Ry. Co. v. State of Arizona,* 78 F.3d 438, 441 (9th Cir.1996); *Burlington N. Santa Fe Ry. Co. v. Lohman,* Case No. 97–4211–CV–C–5 (W.D.Mo. Nov. 20, 1998) (slip op. at 2–3), *rev'd,* 193 F.3d 984 (8th Cir.1999). The Ninth Circuit Court of Appeals held in *Atchison, Topeka & Santa Fe Railway* that "commercial and industrial taxpayers" is the appropriate comparison class for evaluating a privilege and use tax under subsection (b)(4). *See id.* at 441. However, although the Commissioner offers this case as evidence that *ACF Industries* mandates that the proper comparison class is all commercial and industrial properties, the *Atchison, Topeka & Santa Fe Railway* court did not cite to *ACF Industries* as support for this proposition in its discussion or holding. *See Atchison, Topeka & Santa Fe Ry.,* 78 F.3d at 442.

Further, during the pendency of this case before this court, *Lohman,* the other case relied on by the Commissioner, was overruled by the Eighth Circuit Court of Appeals. *See Burlington N. Santa Fe Ry.*

*Co. v. Lohman,* 193 F.3d 984 (8th Cir.), *reh'g and reh'g en banc denied* (8th Cir. Nov. 26, 1999). The Eighth Circuit held that the proper comparison class is the competitive mode because Congress did not specify a particular class in section 11501(b)(4) and the purpose of subsection (b)(4) as a "catchall * * * [is] to prevent discriminatory taxation in any form and to cover a wide variety of taxing techniques." *Id.* at 985–86. Citing to this court's decision in *BN (Minnesota),* the Eighth Circuit added that the selection of too broad a comparison class would defeat the purpose of the statute to ensure "financial stability" to rail carriers. *See id.* at 986.

Therefore, we hold that *ACF Industries* did not overrule *BN (Minnesota),* and we use the competitive mode comparison class to evaluate the tax challenged here.

## II.

■ We now turn to the question of whether the state sales and use tax imposed on rail carrier fuel is discriminatory under section 11501(b)(4) as compared to the taxes paid on fuel used by barges, motor carriers, and air carriers. BN argues that we should look no further than the sales and use tax on fuel. It is BN's position that because motor and air carriers are exempt from the sales and use tax, that tax is discriminatory even though motor and air carriers do in fact pay a tax, albeit a different one, on their fuel.

The Eighth Circuit Court of Appeals decided a case on similar facts adopting the approach argued by BN. *See Lohman,* 193 F.3d at 986. In *Lohman,* the issue was whether Missouri's sales and use tax on fuel was discriminatory as to rail carriers. *See id.* at 985. Rail carriers were subject to a sales and use tax on fuel, but barges and motor carriers were exempt.

*See id.* Still, motor carriers paid an excise tax on fuel at a greater rate than the rail carriers paid under the sales and use tax. *See id.* The *Lohman* court held that because only rail carriers were subject to the sales and use tax on fuel, that tax was discriminatory. *See id.* at 986. The court reasoned that under *Trailer Train Co. v. State Tax Commission,* 929 F.2d 1300, 1303 (8th Cir.1991), the overall tax structure of the state should not be examined because even though it may be fair, it would be "too difficult and expensive to evaluate." *Id.*

However, the Minnesota sales and use tax challenged in this case is imposed on rail carriers *and* barges. As rail carriers are treated no better or worse than barges in Minnesota, *Lohman's* conclusion that rail carriers were discriminated against in Missouri because they were the only member of the class subject to the sales and use tax is not helpful here. Left unanswered by the *Lohman* court is what to do where, as here, two members of the class – barges and rail carriers – are subject to the sales and use tax, but two other members of the class – motor and air carriers – are exempt and pay an excise tax instead.[5] Thus, on these facts we are not persuaded that rail carriers are discriminated against.

Even so, BN argues that this alone does not dispose of the case. BN contends that in addition to exemption from the sales and use tax, air and motor carriers receive a direct benefit from the excise taxes they pay. Specifically, BN notes that the excise taxes are deposited into state funds and used to support public projects such as highway construction and maintenance, as well as airport projects. Thus, BN claims that the excise taxes paid by motor carriers and air carriers are simply "user fees," not taxes. Further, BN states that rail carriers are not treated the same as barges. Although they are both subject to

5. We also recognize that the *Lohman* court identified the comparison class as including only barges, rail carriers, and motor carriers because the parties stipulated those entities are the major competitors. Likewise, the record in this case also reveals that air carriers are not a major competitor of rail carriers in Minnesota. Thus, using the *Lohman* comparison class, this is actually a case where only one of the three competitors is exempt from the sales and use tax.

the same 6.5% sales and use tax, barges do not have to maintain the waterways they use. Therefore, according to BN, rail carriers are discriminated against because they must pay a tax *and* maintain their own rights of way, a two-fold obligation none of the other competitors have.

The Commissioner counters that consideration of the expenditure of tax revenues or the ownership of rights of way here is difficult to conduct, inappropriate under the 4–R Act, and has absurd results. We agree. In light of *Trailer Train* and *Lohman,* we are not persuaded by BN's argument that the use of tax revenues is a determinative factor as to whether a tax is discriminatory. In *Trailer Train,* the Eighth Circuit held that "the use of the proceeds of a tax has *no bearing* on the question of whether the tax is discriminatory" in an analysis under the 4–R Act. *Trailer Train,* 929 F.2d at 1303 (emphasis added). *Trailer Train,* which was decided after *Atchison, Topeka & Santa Fe Railway Co. v. Bair,* 338 N.W.2d 338 (Iowa 1983), and *Burlington Northern Railroad Co. v. Triplett,* 682 F.Supp. 443 (D.Minn. 1988), the cases cited by *BN (Minnesota)* and relied upon by BN for this argument, indicates that a "use" analysis is not appropriate under subsection (b)(4).[6] *See Trailer Train,* 929 F.2d at 1303. The *Lohman* court, relying on *Trailer Train,* was also reluctant to look beyond the challenged tax, even to compare the sales and use tax on fuel paid by rail carriers to an excise tax on fuel paid by competitors. *See Lohman,* 193 F.3d at 986.

Similarly, looking beyond a tax and into the private circumstances of taxed entities,

as BN would have us do here, would be equally complicated and have absurd results. To assess the rail carriers' obligations to maintain the rights of way they own would require an analysis of the cost of doing business for each mode of transportation. Then state taxation would have to be limited to only those taxes needed to equalize costs between the rail carriers and their competitors. This type of comparison would be "too difficult and expensive" to conduct, and does not lend itself to a "bright-line rule[ ] for simple judicial administration." *Trailer Train,* 929 F.2d at 1303.

In addition, an analysis of the use of tax revenues is not as simplistic as suggested by BN. BN argues that because motor carriers and air carriers benefit from expenditures from dedicated funds used to maintain the public rights of way, any taxes they pay directly benefit them. Yet the benefits and burdens of the use of public rights of way are not so clear or so direct. For example, rail carriers benefit from expenditures from the highway fund for highway maintenance because goods shipped by rail often begin and end their journeys on the public highways. In addition, some funds are used for projects that directly benefit rail carriers, such as railroad/highway crossings and bridges. Further, because rail carriers own their rights of way they do not have to share them with the public and can schedule and design maintenance to minimize disruption of transport routes.

We find most troubling the fact that invalidating the challenged tax here will not eliminate the alleged discrimination –

---

**6.** We note that *BN (Minnesota)* is not helpful to our determination of this issue. In *BN (Minnesota),* we commented in dicta that "the use to which the collected tax revenues are put bears on whether or not the tax has a discriminatory effect on railroads." *BN (Minnesota),* 509 N.W.2d at 554. However, the issue of the use of tax revenues was not part of the holding in that case. *See id.* Rather, we held "that the exemptions for barges and airplanes, as well as the alternative tax scheme for motor vehicles, make application of Minnesota's general sales and use tax to railroad rolling stock and repair parts discriminatory and illegal * * * ." *Id.* Our decision in *BN (Minnesota)* did not reach the issue of use and was based in whole or in large part on the lack of any tax on repair parts for at least two of the rail carriers' competitors. Further, the Ninth Circuit Court of Appeals has also rejected the "use" argument advanced by BN in this case. *See Atchison, Topeka & Santa Fe Ry.,* 78 F.3d at 443 (stating that the "4–R Act reaches only tax burdens and not tax benefits").

that other transportation modes use public rights of way and as a result do not have the obligations of the rail carriers, which own, construct, and maintain private rights of way. Therefore, even if the state imposed an identical tax on each of the transportation competitors, the rail carriers could still claim discrimination. *See Triplett*, 682 F.Supp. at 445–46 (accepting a "use" analysis and holding that a fuel excise tax imposed by Minnesota at the same rate of 17 cents per gallon on barges, rail carriers, and motor carriers was discriminatory because rail carriers paid for their "tracks"). This argument could be used to invalidate any tax applicable to rail carriers and does not factor in the benefits of owning one's rights of way. We do not believe Congress intended the 4–R Act to remedy this inherent difference between rail carriers and their competitors.

Finally, in addition to the fact that here rail carriers and barges pay the same tax on fuel, we are struck by the fact that this tax is significantly less than the fuel tax paid by their primary competitors, motor carriers. Motor carriers are subject to a petroleum excise tax of 20 cents per gallon, much greater than the 2.6 to 4.2 cents per gallon sales and use tax paid by rail carriers. As compared to motor carriers, rail carriers clearly paid a lower tax on fuel.[7]

Therefore, we hold that the sales and use tax on transportation fuel used by rail carriers is not invalid as a discriminatory tax under section 11501(b)(4). We reverse the grant of summary judgment to BN, and remand to the tax court for further proceedings in accordance with this opinion.

Reversed.

---

**7.** Air carriers paid a petroleum excise tax on aviation fuel at a rate ranging from ½ to 5 cents per gallon and so may have paid, on occasion, a lower or higher tax on fuel than rail carriers. However, even the dissent in *ACF Industries* recognizes that "subsection (b)(4) merely protects railroads from discrimination" and does not grant "them a right to be treated like the most favorably treated taxpayer." *ACF Indus.*, 510 U.S. at 352, 114 S.Ct. 843 (Stevens, J., dissenting).