**MY BROTHER'S KEEPER,
et al., Appellants,**

v.

**SCOTT COUNTY, Respondent.**

**No. C6–00–1173.**

Court of Appeals of Minnesota.

Jan. 30, 2001.

Mary K. Martin, St. Paul, for appellants.

Thomas J. Harbinson, Scott County Attorney, Susan K. McNellis, Assistant County Attorney, Shakopee, for respondent.

Considered and decided by AMUNDSON, Presiding Judge, HALBROOKS, Judge, and MULALLY, Judge.*

## OPINION

AMUNDSON, Judge.

Appellants contest a summary judgment enjoining them from conducting business activities in a residential neighborhood. Appellants are licensed to provide residential-based habilitation services for mentally retarded individuals. While under the Scott County Zoning Ordinance and Minn. Stat. § 462.357, subd. 7 (2000), such services may be located in an area zoned for single families, the county contended that the provider could not operate exclusively administrative services from this location. We affirm the district court's judgment.

## FACTS

Appellant Arliss Anderson owns a Scott County property that she leases to appellant My Brothers' Keeper, a non-profit Minnesota corporation licensed to provide residential-based habilitation services for persons with mental retardation or related conditions. Anderson resides in the home and three employees of My Brothers' Keeper perform billing and staffing services on the lower level. The property does not house nor is it used as a site for the activities of clients of My Brothers' Keeper.

On January 11, 2000, an employee of the Scott County Planning Department inspected the premises and discovered the business operation. Because the property is situated within a zone authorized for single-family residential use with permitted use as a "[g]roup care facility as permitted by State Statues," the county instructed Anderson that she could not continue to employ three non-resident employees in her home. Anderson's appeal for a variance was denied by the Scott County Board of Adjustment.

My Brothers' Keeper then joined Anderson in seeking an injunction and declaratory judgment from the Scott County District Court in support of their contention that the administrative activity is a permitted use under Scott County zoning regulations. They argued further that such use is permitted by Minn.Stat. § 462.357, subd. 7 (2000). The district court disagreed and granted Scott County's motion for summary judgment permanently enjoining Appellant's use of the property as offices for a business. This appeal followed.

## ISSUE

Did the district court err as a matter of law by enjoining My Brothers' Keeper from providing administrative services at a property located within a residential zone?

## ANALYSIS

■ The parties agree that the material facts of this case are not in dispute. Therefore, the district court's application of summary judgment was proper and this court reviews its legal judgment de novo. *Burlington N. R.R. Co. v. Commissioner of Revenue*, 606 N.W.2d 54, 57 (Minn. 2000).

■ Under Minnesota law, interpretation of a zoning regulation is a question of law subject to three rules of construction: (1) terms should be construed upon their plain and ordinary meaning; (2) any ambiguity should be resolved against the gov-

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

erning body; and (3) the regulation should be considered in light of any underlying policy goals. *Frank's Nursery Sales, Inc. v. City of Roseville*, 295 N.W.2d 604, 608–09 (Minn.1980).

■ The property owned by Arliss Anderson is situated within a zone designated single-family residential by Scott County. The zoning ordinance provides several permitted uses, including "[g]roup care facilit[ies] as permitted by State Statutes." Scott County, Minn., Zoning Ordinance No. 3 § 5A–2(2) (1996). The zoning ordinance defines "group care facility" as a "facility licensed by the State of Minnesota to provide 24–hour–a–day care, supervision, food, lodging, rehabilitation, training, education, habilitation or treatment outside a patient's own home." *Id.* at § 1–5. Such permitted use has a statutory genesis: the enabling legislation which provides the municipal power to zone in the State of Minnesota mandates that "state licensed residential facilit[ies] serving six or fewer persons * * * shall be considered a permitted single family residential use of property for the purposes of zoning." Minn.Stat. § 462.357, subd. 7 (2000). The plain meaning of the Scott County ordinance is clear: the county sought, with encouragement from the state, to permit group home residents to live in residential neighborhoods where a plain reading of the ordinance would have proscribed such an arrangement. There is no ambiguity in the language of either the ordinance or the state statute that could be construed against Scott County.

An examination of the policies which underlie the zoning ordinance further substantiates the district court's judgment. First, the county promulgated its zoning ordinance to regulate "the density of population for the purpose of promoting the * * * general welfare of Scott County." Scott County, Minn., Zoning Ordinance No. 3 (1996). Secondly, the county expressly provides for home employment, but limits its scope: the single-family residential zone permits only *occupants* to engage in a home business. Scott County, Minn., Zoning Ordinance No. 3 § 5A–2(3) (1996). Finally, it is the express policy of the State of Minnesota that "handicapped persons * * * should not be excluded by * * * land use regulations from the benefits of normal residential surroundings." Minn.Stat. § 462.357, subd. 6a (2000). The policy of the state is not to favor and promote *businesses* which provide residential-based habilitation services; that policy is to favor *persons* who receive those services by promoting their social integration. As the Minnesota Supreme Court has stated, the legislature enacted Minn.Stat. § 462.357, subd. 7 "as part of a broad program, on the state and national level, to de-institutionalize mentally retarded persons and return them to the community." *Costley v. Caromin House, Inc.*, 313 N.W.2d 21, 27 (Minn.1981).[1]

Read together, the county zoning regulation and state zoning statute clearly describe a regulatory environment wherein Anderson alone could administer her business from her home or she could operate a group care facility in that home. But the zoning ordinance does not permit her to engage employees solely to administer that business from her home.

### DECISION

■ Because Minn.Stat. § 462.357, subd. 7 (2000) was enacted to encourage the social integration of persons who receive residential-based habilitation services, we affirm the district court's decision that the statute does not permit the provision of exclusively administrative services at a location within a neighborhood zoned for single-family residential use.

**Affirmed.**

1. As of 1987, all fifty states and the District of Columbia had passed legislation designed to encourage neighborhood group homes for the mentally retarded. James T. Hogan, Comment, *Community Housing Rights for the Mentally Retarded*, 1987 Det. C.L.Rev. 869, 892.