**Richard B. OGILVIE, Trustee of the property of the Chicago, Milwaukee, St. Paul and Pacific Railroad Company, a corporation; and Burlington Northern, Inc., a corporation, Plaintiffs,**

v.

**The STATE BOARD OF EQUALIZATION OF the STATE OF NORTH DAKOTA, an Administrative Board or Agency of the State of North Dakota, Defendant.**

Civ. No. A3-80-134.

United States District Court,
D. North Dakota,
Southeastern Division.

June 9, 1995.

See also 492 F.Supp. 446.

Leo F.J. Wilking, Nilles, Hansen & Davies, Ltd., Fargo, ND, for plaintiffs.

Robert W. Wirtz, Asst. Atty. Gen., State of N.D., Bismarck, ND, for defendant.

## MEMORANDUM AND ORDER

BENSON, Senior District Judge.

Burlington Northern Railroad Company ("Burlington Northern") filed a "Motion for Show Cause Order" on April 20, 1995, asking the court to hold Defendant in contempt for violating an order of this court. The court received affidavits and briefs from both sides and heard oral arguments on May 25, 1995. The question presented is whether the Supreme Court's decision in *Department of Revenue of Oregon v. ACF Industries, Inc.,* — U.S. ——, 114 S.Ct. 843, 127 L.Ed.2d 165 (1994), effectively overturned the permanent

injunctions issued by this court on February 3, 1982 and April 2, 1982. The court holds that *ACF Industries* did not overturn the injunctions and grants the railroad its requested relief.

## Background

This motion relates to two cases filed in 1979 and 1980 by various railroads operating in North Dakota. The railroads were contesting the taxing authority of the State as it relates to railroads. *See Ogilvie v. State Board of Equalization of the State of North Dakota*, No. 79 Civ. 183 (D.N.D. Feb. 3, 1982) and *Ogilvie v. State Board of Equalization of the State of North Dakota*, No. 80 Civ. 134 (D.N.D. Apr. 2, 1982). The railroads sought to have the tax policies of the State of North Dakota enjoined because they violated the Railroad Revitalization and Regulatory Reform Act of 1976, § 306(1)(a), 49 U.S.C. § 11503 (herein after the "4–R Act"). The 4–R Act prevents states from taxing railroads in a discriminatory manner.[1] This court held that the State's practice of taxing the railroad's personal property when it did not tax the personal property of most commercial entities was discriminatory and thereby violated Section 306(1)(d) the 4–R Act, 49 U.S.C. 11503(b)(4). *See Ogilvie v. State Board of Equalization of the State of North Dakota*, 492 F.Supp. 446 (D.N.D.1980), *aff'd*, 657 F.2d 204 (8th Cir.1981), *cert. denied*, 454 U.S. 1086, 102 S.Ct. 644, 70 L.Ed.2d 621 (1981).

On February 3, 1982, this court entered a post-appeal order, on stipulation of the parties, directing the State Board of Equalization ("the Board") to refrain from including the railroad's personal property in its valuations for all tax years after 1979. Affidavits submitted in support of the present motion indicate the Board discontinued the taxation of the railroad's personal property until the 1994 tax year. The North Dakota legislature in its 1995 session repealed the taxation of railroad personal property for the years after 1994.[2] Consequently, only the 1994 tax year is at issue.

## Subject Matter Jurisdiction

 The Board contends this court no longer has jurisdiction over its 1982 injunction because the injunction has been overruled. The Board's theory is that because the *ACF Industries* case changed the law, the court lost its jurisdiction. The Board's position on jurisdiction is wrong. It appears the Board has confused the jurisdiction of a court to hear a question with the correctness of its decision. Congress has granted the district courts jurisdictional powers to enforce the 4–R Act in at least two ways. First, this court has jurisdiction because the plaintiff's complaints are based on the interpretation of a federal statute; namely, 49 U.S.C. § 11503. The court, therefore, has "federal question" jurisdiction pursuant to 28 U.S.C. § 1331. Secondly, the 4–R Act specifically grants jurisdiction to the district courts to enforce its provisions. *See* 28 U.S.C. § 11503(c).[3] *Atchison, Topeka and*

---

1. The relevant portion of Section 306 of the 4–R Act is codified as 49 U.S.C. § 11503(b) and states:

 (b) The following acts unreasonably burden and discriminate against interstate commerce, and a State, subdivision of a State, or authority acting for a State or subdivision of a State may not do any of them:

 (1) assess rail transportation property at a value that has a higher ratio to the true market value of the rail transportation property than the ratio that the assessed value of other commercial and industrial property in the same assessment jurisdiction has to the true market value of the other commercial and industrial property.

 (2) levy or collect a tax on an assessment that may not be made under clause (1) of this subsection.

 (3) levy or collect an ad valorem property tax on rail transportation property at a tax rate that exceeds the tax rate applicable to commercial and industrial property in the same assessment jurisdiction.

 (4) impose another tax that discriminates against a rail carrier providing transportation...."

 49 U.S.C. 11503(b). (often referred to as Section 306(1)(a–d))

2. N.D.C.C. 57–02–08 was modified by H.B. 1396, 54th Leg., North Dakota Laws 1995 (approved March 10, 1995, effective after December 31, 1994). The modification has the effect of exempting railroad personal property from State taxation.

3. The specific grant of jurisdiction in § 11503(c) is apparently redundant given the more general "federal question" jurisdiction, but in fact it was necessary to overcome the Tax Injunction Act, 28 U.S.C. § 1341. The Tax Injunction Act prevents

*Santa Fe Railway Co., v. Lennen,* 640 F.2d 255, 258 (10th Cir.1981) (§ 11503(c) is specific and clear in authorizing a district court to grant injunctive relief to prevent, restrain, or terminate violations of § 11503(b) of the Act). Burlington Northern's allegation of discriminatory effect is sufficient to establish subject matter jurisdiction under the 4–R Act. *Burlington Northern R.R. Co. v. James,* 911 F.2d 1297, 1301 (8th Cir.1990). The court holds it has continuing jurisdiction over its prior injunction.

## Discussion

■ The Supreme Court recent decision in *Department of Revenue of Oregon v. ACF Industries, Inc.,* — U.S. —, 114 S.Ct. 843, 127 L.Ed.2d 165 (1994) involved a railroad car company's 4–R Act challenge to Oregon's ad valorem tax system. The plaintiff contended the State's taxation of its railroad cars violated the 4–R Act because the State granted exemptions to various classes of commercial and industrial property while taxing other classes of property, including the railroad cars, in full. The Court described the Oregon system as follows:

> Oregon imposes an ad valorem tax upon all real and personal property within its jurisdiction, except property granted an express exemption. Ore.Rev.Stat. § 307.030 (1991). Various classes of business personal property are exempt, including agricultural machinery and equipment; nonfarm business inventories; livestock; poultry; bees; fur-bearing animals; and agricultural products in the possession of farmers. §§ 307.325, 307.400. Standing timber is also exempt, but is subject to a severance tax when harvested. § 321.272. Oregon, like many other States, exempts motor vehicles as well, instead levying upon them a modest annual registration fee. §§ 803.585, 803.420(1)....

> The railroad cars are considered "tangible personal property" under Oregon law, § 307.030, and are not exempt from taxation.

federal courts from enjoining the collection of state taxes where there exists a "plain, speedy and efficient remedy" in state courts. 28 U.S.C. § 1341. In the 4–R Act, Congress is replacing the power to hear questions under the 4–R Act

*Department of Revenue of Oregon v. ACF Industries,* — U.S. —, —, 114 S.Ct. 843, 846, 127 L.Ed.2d 165 (1994).

The Court considered the 4–R Act as a whole and concluded that Congress intended to allow the States to grant exemptions from a generally applicable ad valorem tax without subjecting the system to challenge. *Id.* at —, 114 S.Ct. at 848–51. The Court noted the strong history tax exemptions have had in American tax policy. *Id.* at —, 114 S.Ct. at 850. Tax exemptions are now and have routinely been given to businesses that governments wish to prosper, such as start-up businesses, pollution control companies, and agricultural concerns. *Id.* Congress had knowledge of this practice and would have expressly prohibited it if Congress wanted to prevent all exemptions. *Id.* at —, 114 S.Ct. at 851. Federalism would prohibit the Court from extending the statute beyond the express words of Congress, and therefore exemptions would not be prohibited. *Id.* at —, 114 S.Ct. at 850–51.

The Court recognized, however, that a State might extend the concept of exemptions beyond its natural meaning and create a system that targeted its discrimination under the pretext of an exemption. If a State were to exempt all but one industry from a tax, it would no longer be a system of generally-applicable taxation with exemptions, but rather a targeted tax. The Court in *ACF Industries* limited its holding to statutes which employ true exemptions:

> [T]his is not a case in which the railroads—either alone or as a part of some isolated and targeted group—are the only commercial entities subject to an ad valorem property tax. Cf. *Burlington Northern R. Co. v. City of Superior,* 932 F.2d 1185 (CA7 1991) (occupation tax on owners and operators of "iron ore concentrates docks," in practical effect, applied only to docks owned by one particular rail carrier). If such a case were to arise, it might be incorrect to say that the State "exempted"

with the district courts which would have been removed by the Tax Injunction Act, by making specific reference to the Tax Injunction Act. *See* 49 U.S.C. § 11503.

the nontaxed property. Rather, one could say that the State had singled out railroad property for discriminatory treatment. See J. Hellerstein & W. Hellerstein, State and Local Taxation 973 (5th ed. 1988) (the term "exemption" does not mean every exclusion from the reach of a levy, but rather exclusions of "property, persons, transactions . . . which are logically within the tax base"). On the record before us, Oregon's ad valorem tax does not single out railroad property in that manner, and we need not decide whether subsection (b)(4) would prohibit a tax of that nature. *ACF Industries,* —— U.S. ——, ——–—–——, 114 S.Ct. 843, 851–2 (1994).

■ This passage clearly states that the *ACF Industries* holding does not apply when a State targets railroads for taxation under the pretext of broad exemptions. It also strongly suggests that such targeted taxation would violate the 4–R Act. The Supreme Court stated its holding as follows: "We hold that a State may grant exemptions from a *generally applicable* ad valorem property tax without subjecting the taxation of railroad property to challenge under the relevant provision of the 4–R Act." *ACF Industries,* —— U.S. at ——, 114 S.Ct. at 846 (emphasis added). The words "generally applicable" add nothing to the sentence unless they form the basis of an exception.

■ The North Dakota tax system starts by taxing all property, both personal and real in the State.[4] But, *all* personal property is *exempt* from tax, except the personal property of "centrally assessed" businesses.[5] North Dakota's taxation system falls squarely within the exception. The following are centrally assessed: railroad companies, airlines, telecommunications and mobile radio communications companies, electric and gas

distribution companies, and pipeline companies.[6] Under this system, only the personal property of these few "centrally assessed" industries is taxed. But some of the centrally assessed personal property is exempted as well. Airlines are taxed only on their real property.[7] The equipment of gas and pipeline companies is considered "real property" and is not taxed by the State Board of Equalization. However, some of it is taxed as real property by local authorities.[8] In summary, North Dakota taxes the personal property of only four industries: railroad companies, airlines, telecommunications and mobile radio communications companies, electric and gas distribution companies, and pipeline companies.

The North Dakota tax scheme is fundamentally different from the Oregon tax scheme reviewed in *ACF Industries.* The Supreme Court did not overrule the decisions this court made in the early eighties because the holding was limited to the Oregon system. Furthermore, *ACF Industries* continues to support the injunctions of this court. This court's order of February 3, 1982, that declared the State of North Dakota's practice of taxing railroad personal property to be in violation of the 4–R Act is hereby reaffirmed.

### Five Percent Discount for Early Payment

■ Burlington Northern has also asked for clarification of the status of this court's ruling of April 2, 1982 with respect to a five percent discount granted for early payment. Section 57–20–09 of the North Dakota Century Code provides a discount for early payment of real estate taxes.

North Dakota defines real property, for tax purposes, as including "improvements to land the title to which still is vested in any railroad company *and which is not*

---

4. N.D.C.C. 57–02–03; Joint Stipulation of Facts

5. N.D.C.C. § 57–02–08(25); Joint Stipulation of Facts.

6. North Dakota Constitution, Art. X, § 4 lists the "centrally assessed" industries. *See* Joint Stipulation of Facts and Defendant's Exhibit 1, "Proceedings of State Board of Equalization of North Dakota 1994, Compiled by Bob Hanson, Tax Commissioner and Secretary of the State Board of Equalization."

7. N.D.C.C. § 57–32–01.2; Joint Stipulation of Evidence filed May 18, 1995.

8. N.D.C.C. § 57–02–04(3) defines as real property, "Machinery and equipment, but not including small tools and office equipment, used or intended for use in any process of refining products from oil or gas extracted from the earth, but not including such equipment or appurtenances located on leased oil and gas production sites."

*used exclusively for railroad purposes....* " N.D.Cent.Code § 57–02–04(1) (emphasis added). All property not included within the definition of real property codified at § 57–02–04 is personal property for tax purposes. N.D.Cent.Code § 57–02–05.1. Under this statutory scheme, all property used exclusively for railroad purposes is considered personal property and not subject to the five percent discount.

Plaintiffs contend exclusion of the railroad from the benefits of the discount provision is a discriminatory practice in violation of the 4–R Act. This court agrees. Memorandum and Order, Docket Number 42, dated April 2, 1982.

North Dakota's practice of arbitrarily classifying real property owned by railroads as personal property is as discriminatory today as it was in 1982. *See also, Burlington Northern Railroad Company v. Bair,* 766 F.2d 1222 (8th Cir.1985) (tax scheme which classified railroad personal property as real property prohibited by 4–R Act). The effect of such a practice is to deny the railroads the five percent discount. The Supreme Court's holding in *ACF Industries* with respect to exemptions from a generally applicable property tax does not change the analysis. This court hereby reaffirms its order of April 2, 1982 that declared North Dakota's classification of real property as personal property to be in violation of the Railroad Revitalization and Regulatory Reform Act of 1976.

**Relief**

◾ The Board violated this court's orders when it assessed Burlington Northern on its personal property and refused to grant Burlington Northern the five percent discount for early payment of real estate taxes. Even if *ACF Industries* had overruled the orders of this court, the State Board had no legal right to violate those orders. " '[P]ersons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order.' " *Celotex Corp. v. Edwards,* —— U.S. ——, ——, 115 S.Ct. 1493, 1495, 131 L.Ed.2d 403 (1995) (quoting *GTE Sylvania, Inc. v. Consumers Union of United States, Inc.,* 445 U.S. 375, 386, 100 S.Ct. 1194, 1201,

63 L.Ed.2d 467 (1980)); *See also, Walker v. City of Birmingham,* 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967) (an injunction must be obeyed until it is dissolved, even if it was erroneously issued).

◾ If the Board, after reading *ACF Industries,* believed that case changed the law, it should have moved this court for reconsideration of its order. Instead, the Board requested an opinion from the North Dakota Attorney General and determined on its own that the order need no longer be followed. *See* 94–17 N.D.Op.Att'y Gen. 73 (1994) (available at 1994 WL 313260). The Attorney General felt the *ACF Industries* case "impliedly overruled" the orders of this court. *Id.* at 74. An Attorney General's opinion is not a substitute for a formal dissolution of an injunction. The authority of this court cannot be usurped in such a manner.

Nonetheless, the court believes the Board acted in good faith in following the opinion of its counsel. A fine would not be appropriate. This court is concerned only that plaintiffs be made whole. To that end, the Board must return any money received from plaintiffs that it would not have received had the court's orders been followed. The State Board must also be ordered to pay plaintiffs' reasonable attorney's fees and expenses incurred as a result of its error.

IT IS THEREFORE ORDERED: The State of North Dakota shall refund the 1994 taxes it collected from plaintiffs in violation of the judgments entered by this court in *Ogilvie v. State Board of Equalization of the State of North Dakota,* No. 79 Civ. 183 (D.N.D. Feb. 3, 1982), and *Ogilvie v. State Board of Equalization of the State of North Dakota,* No. 80 Civ. 134 (D.N.D. Apr. 2, 1982), plus interest, and shall reimburse plaintiffs' reasonable attorney's fees and expenses.