[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 11, 2008
THOMAS K. KAHN
CLERK

No. 08-12712
_____

D. C. Docket No. 08-00285-CV-HGD-S


NORFOLK SOUTHERN RAILWAY COMPANY,

Plaintiff-Appellant,

versus

ALABAMA DEPARTMENT OF REVENUE,
TIM RUSSELL,
Commissioner of Revenue.

Defendants-Appellees.


_____

Appeal from the United States District Court for the
Northern District of Alabama
_____
(December 11, 2008)

Before BARKETT and WILSON, Circuit Judges, and POGUE,* Judge.


_____

*Honorable Donald C. Pogue, of the United States Court of International Trade, sitting by designation.

POGUE, Judge:

Norfolk Southern Railway Company ("Norfolk") appeals an order denying its application for preliminary injunctive relief from the imposition of Alabama's sales and use tax on diesel fuel. Norfolk asserts that the sales and use tax on diesel fuel discriminates against railroad companies in violation of Section 306(1)(d) of the Railroad Revitalization and Regulatory Reform Act of 1976 (the "4-R Act"), currently codified as 49 U.S.C. § 11501(b)(4).

We affirm the district court's denial of a preliminary injunction. *Norfolk S. Ry. v. Ala. Dep't of Revenue*, Civil Action No. 2:08-cv-00285-HGD, slip op. at 33 (N.D. Ala. Apr. 9, 2008). Before we explain the reasons for that affirmance, however, we will first outline the tax provisions Norfolk challenges, briefly review the purpose and text of the 4-R Act, and summarize the proceedings below; we will then explain our conclusion that Alabama's tax does not violate the 4-R Act.

**I**

Though Norfolk is a Virginia railway corporation, it is qualified to do business in Alabama and has approximately a one-third market share among Alabama rail carriers. While Norfolk's operations extend across twenty-two states, it owns its rights-of-way and builds, maintains, and repairs its tracks and other structures in Alabama, and is therefore subject to taxation there.

Pursuant to ALA. CODE §§ 40-23-1 to -213 (2008), Alabama levies a "sales tax" on the gross receipts of retail entities selling tangible personal property within the state,[1] *id*. § 40-23-2(1), and a "use tax" on the storage, use, or consumption of tangible personal property in the state. *Id*. § 40-23-61(a). The tax is levied at a rate of four percent of the purchase price. *Id*. §§ 40-23-2(1), -61(a). After the payment of administrative and enforcement expenses, and small payments to other state funds, Alabama deposits the sales and use tax proceeds into its Education Trust Fund. *Id*. §§ 40-23-35(a) to -35(f), -85. Further, a number of Alabama cities and counties levy local sales and use taxes at varying rates. *Norfolk S. Ry.*, Civil Action No. 2:08-cv-00285-HGD, slip op. at 5. Norfolk must pay these state and local sales and use taxes on its purchase, consumption, or use of diesel fuel.[2] According to expert testimony, after capital improvements and compensation, diesel fuel constitutes Norfolk's third-highest business expense.

---

[1] Although in reality collected from retailers, the sales tax is "conclusively . . . presumed to be a direct tax on the retail consumer." *Id*. § 40-23-26(c).

[2] Although not at issue here, we note that Norfolk also pays state ad valorem tax on its Alabama property (e.g., track, roadway structures, and roadbeds) and pays sales and use tax on the materials used to build, maintain, and repair its property. As motor carriers, air carriers, and water carriers do not own, build, or maintain roads, airports and airspace, or ports and waterways, such carriers do not pay sales and use tax or ad valorem tax in this manner. We note also that if Norfolk buys diesel fuel in other states, it still must pay use tax on the sales price or reasonable market value of the fuel used, unless it has already paid equal or greater amounts of sales tax in the other states. *See* ALA. CODE §§ 40-23-61(e), -65.

By and large, Norfolk's main competitors[3] do not pay Alabama's sales and use tax on the diesel fuel they purchase or consume. Rather, so long as motor carriers pay Alabama's motor fuel excise tax, at a total of $0.19 per gallon, such entities do not pay the sales and use tax on diesel fuel. *Id*. §§ 40-17-2(1) (imposing $0.13 per gallon on motor fuel; having paid this tax, motor carriers are "not subject to any other excise tax levied by the state"), -220(e) (imposing upon distributors and suppliers an additional excise tax of $0.06 per gallon on motor fuel received from a terminal, refinery, barge, or pipeline), -220(j).[4] Notably, however, motor carriers are not exempt from the sales

_____

[3] The parties agree that Norfolk's direct competitors are "on-highway motor carriers of property in interstate commerce" ("motor carriers") and "carriers of property in interstate commerce by ships, barges, and other vessels" ("water carriers"); air carriers only marginally compete with rail carriers. *Norfolk S. Ry.*, Civil Action No. 2:08-cv-00285-HGD, slip op. at 4. The parties seemingly agree that these direct competitors, or the "competitive mode," serve as the proper "comparison class" for section (b)(4). Courts are split on the issue of the proper "comparison class." *Compare CSX Transp., Inc. v. Ala. Dep't of Revenue*, Civil Action No. 2:08-cv-00655-UWC, slip op. at 6-7 & n.3 (N.D. Ala. July 8, 2008) (applying "competitive mode" comparison class, consisting of railroad's "direct competitors"), *and Union Pac. R.R. v. Minn. Dep't of Revenue*, 507 F.3d 693, 695 (8th Cir. 2007) (same), *and Ka. City S. Ry. v. Bridges*, No. 04-2547, 2007 U.S. Dist. LEXIS 23477, at *21-22 (W.D. La. Mar. 30, 2007) (same), *and Burlington N. R.R. v. Comm'r of Revenue*, 509 N.W.2d 551, 553 (Minn. 1993) (same), *with Burlington N. Santa Fe Ry. v. Monroe*, Civil Action No. 97-D-1754-N, slip op. at 21 (M.D. Ala. Aug. 10, 1998) (applying comparison class of other "commercial and industrial taxpayers"), *and Atchison, Topeka & Santa Fe Ry. v. Arizona*, 78 F.3d 438, 441 (9th Cir. 1996), *cert. denied*, 519 U.S. 1029 (1996) (same), *and Ka. City S. R.R. v. McNamara*, 817 F.2d 368, 375, 376 n.15 (5th Cir. 1987) (same), *and Ala. Great S. R.R. v. Eagerton*, 541 F. Supp. 1084, 1086 (M.D. Ala. 1982) (same). The Supreme Court in dicta has applied the "other commercial and industrial taxpayers" category to challenges to state taxes under section (b)(4). *See Dep't of Rev. v. ACF Indus., Inc.*, 510 U.S. 332, 335 (1994). In any event, as we find that the subject tax is generally applicable in accordance with *ACF Industries*, we need not determine the appropriate "comparison class" here.

[4] Rail carriers do not pay fuel excise tax on their purchase or consumption of diesel fuel. *Id*. §§ 40-17-2(1) ("motor fuel subject to the excise tax levied by this article shall not be subject to any other excise tax levied by the state"), -220(d)(2), -220(e) ("where any excise tax imposed

and use tax if they do not pay the motor fuel excise tax on diesel fuel. *See id*. § 40-17-2(1).[5] Alabama spends its fuel excise tax proceeds on the construction, repair, and maintenance of public highways, *id*. §§ 40-17-13(4), -146, -222, as well as on costs of tax collection and bonds previously issued to build roads. *Id*. § 40-17-13.

In addition, Alabama levies a gasoline tax at a rate of $0.12 per gallon on gasoline intended for use in internal combustion engines. *Id*. § 40-17-31(a) (imposing an excise tax of $0.07 per gallon and a supplemental excise tax of $0.05 per gallon). An additional excise tax of $0.04 per gallon also applies to gasoline. *Id*. § 40-17-220(a)-(b). Alabama spends the proceeds from the gasoline taxes to maintain highways and streets. *Id*. §§ 40-17-31(c)(2), -223. Moreover, motor carriers are also subject to a motor *carrier* fuel excise tax equal to the applicable gasoline or diesel fuel tax, but they receive credit as to their motor carrier fuel excise tax bill for gasoline or diesel fuel tax already paid on the subject gasoline or diesel fuel. *Id*. §§ 40-17-141, -142(a).[6]

_____

by this section shall have been paid to the state by a distributor or supplier the payment shall be sufficient, the intent being that the tax shall be paid to the state but once").

[5] Norfolk argues that "there is no evidence that motor carriers pay anything other than the excise tax." App.'s Br. 5 n.3. However, Norfolk has not cited the court to the record, nor did Norfolk present any evidence before the trial court on this issue.

[6] Section 40-17-141 reads that "[e]very motor carrier shall pay an excise tax upon motor fuels used in its operations within this state at the same tax rate per gallon as . . . the gasoline tax and diesel fuel tax." Section 40-17-142(a) indicates that "[e]very motor carrier subject to the tax hereby imposed shall be entitled to a credit on such tax equivalent to the rate per gallon of the

Interstate and international water carriers are also exempt from the sales and use tax on fuel. *Id*. §§ 40-23-4(a)(10), -62(12). While *intrastate* water carriers must pay sales and use taxes on fuel, Norfolk insists that intrastate water carrier shipments constitute only a small portion (according to one of Norfolk's trial exhibits, only about one million of approximately 194 million tons of intrastate shipments) of its competition within Alabama.

## II

Norfolk challenges Alabama's levy of sales and use tax on diesel fuel under the 4-R Act. Congress passed the 4-R Act in 1976:

> "to provide the means to rehabilitate and maintain the physical facilities, improve the operations and structure, and restore the financial stability of the railway system of the United States." § 101(a). Among the means chosen by Congress to fulfill these objectives, particularly the goal of furthering railroad financial stability, was a prohibition on discriminatory state taxation of railroad property. After an extended period of congressional investigation, Congress concluded that "railroads are over-taxed by at least $ 50 million each year." H. R. Rep. No. 94-725, p. 78 (1975) . . . .
>
> In broad terms, Congress declared in § 306(b) that assessment ratios or taxation rates imposed on railroad property which differ significantly from the ratios or rates imposed on other commercial and industrial property are prohibited as burdens on interstate commerce. Section

---

applicable Alabama tax on motor fuel which is currently in effect on all motor fuel purchased by such motor carrier within this state for use in its operations either within or without this state and upon which the motor fuel tax has been paid by such motor carrier." Thus, it appears that motor carriers do not pay the motor carrier fuel tax so long as they pay either the applicable gasoline or applicable diesel fuel taxes.

306(c) declared an exception from the provisions of the Tax Injunction Act, 28 U. S. C. § 1341, allowing railroads to challenge discriminatory taxation in federal district courts.

*Burlington N. R.R. v. Okla. Tax Comm'n*, 481 U.S. 454, 457 (1987) (footnotes omitted).

Consistent with its purpose, the text of the 4-R Act focuses primarily on discriminatory property taxation, but it also includes a broader prohibition in section 11501(b)(4). In current form, 49 U.S.C. § 11501[7] reads:

(a) In this section—

(1) the term "assessment" means valuation for a property tax levied by a taxing district;

(2) the term "assessment jurisdiction" means a geographical area in a State used in determining the assessed value of property for ad valorem taxation;

(3) the term "rail transportation property" means property, as defined by the Board, owned or used by a rail carrier providing transportation subject to the jurisdiction of the Board under this part; and

(4) the term "commercial and industrial property" means property, other than transportation property and land used primarily for

---

[7] The original language of the relevant portion of the Act, section 306, was originally codified as 49 U.S.C. § 26c. *CSX Transp., Inc. v. Ga. State Bd. of Equalization*, 128 S. Ct. 467, 470 n.1 (2007). In 1978, section 306 was recodified, without any intended substantive change, at 49 U.S.C. § 11503. *Id.*; Act of Oct. 17, 1978, Pub. L. No. 95-473, Ch. 15, 92 Stat. 1337, 1445-46, 1466 (1978). In 1995, Congress again recodified section 306, without substantive change, as 49 U.S.C. § 11501. *Ga. State Bd. Of Equalization*, 128 S. Ct. at 470 n.1; Act of Dec. 29, 1995, Pub. L. No. 104-88, § 102(a), 109 Stat. 803, 843-44 (1995).

agricultural purposes or timber growing, devoted to a commercial or industrial use and subject to a property tax levy.

(b) The following acts unreasonably burden and discriminate against interstate commerce, and a State, subdivision of a State, or authority acting for a State or subdivision of a State may not do any of them:

(1) Assess rail transportation property at a value that has a higher ratio to the true market value of the rail transportation property than the ratio that the assessed value of other commercial and industrial property in the same assessment jurisdiction has to the true market value of the other commercial and industrial property.

(2) Levy or collect a tax on an assessment that may not be made under paragraph (1) of this subsection.

(3) Levy or collect an ad valorem property tax on rail transportation property at a tax rate that exceeds the tax rate applicable to commercial and industrial property in the same assessment jurisdiction.

(4) Impose another tax that discriminates against a rail carrier providing transportation subject to the jurisdiction of the Board under this part.

(c) Notwithstanding section 1341 of title 28 and without regard to the amount in controversy or citizenship of the parties, a district court of the United States has jurisdiction, concurrent with other jurisdiction of courts of the United States and the States, to prevent a violation of subsection (b) of this section. Relief may be granted under this subsection only if the ratio of assessed value to true market value of rail transportation property exceeds by at least 5 percent the ratio of assessed value to true market value of other commercial and industrial property in the same assessment jurisdiction. The burden of proof in determining assessed value and true market value is governed by State law. If the ratio of the assessed value of other commercial and industrial property in the assessment jurisdiction to the true market value of all other commercial and industrial property cannot be determined to the satisfaction of the district court through the

random-sampling method known as a sales assessment ratio study (to be carried out under statistical principles applicable to such a study), the court shall find, as a violation of this section—

> (1) an assessment of the rail transportation property at a value that has a higher ratio to the true market value of the rail transportation property than the assessed value of all other property subject to a property tax levy in the assessment jurisdiction has to the true market value of all other commercial and industrial property; and

> (2) the collection of an ad valorem property tax on the rail transportation property at a tax rate that exceeds the tax ratio rate applicable to taxable property in the taxing district.

Similar to other jurisdictions, this circuit interprets section 11501(b)(4) as a "catchall" that prevents all forms of discriminatory taxes, property or otherwise. *See Ala. Great S. R.R. v. Eagerton*, 663 F.2d 1036, 1040 (11th Cir. 1981). *See also Dep't of Revenue v. ACF Indus., Inc.*, 510 U.S. 332, 339-40 (1994) (reading section (b)(4) broadly to include discriminatory property taxes, indirectly indicating that (b)(4) also prevents discriminatory non-property taxes).

## III

On February 19, 2008, Norfolk filed suit in the United States District Court for the Northern District of Alabama, challenging the imposition of Alabama's sales and use tax on its diesel fuel, and seeking declaratory in addition to preliminary and permanent injunctive relief. Norfolk's complaint alleged that "[t]he Alabama scheme of taxation . . . results in discrimination against Alabama railroads . . . in violation of

Section 11501(b)(4), which entitles Norfolk [] to injunctive relief provided by Section 11501(c) thereof." The Defendants, Alabama Department of Revenue and Tim Russell, Commissioner of Revenue (collectively, "Department"), responded that Norfolk could not claim "reasonable cause" to believe that a 4-R Act violation had occurred, because the law has remained unchanged since *Burlington Northern Santa Fe Railway v. Monroe*, Civil Action No. 97-D-1754-N (M.D. Ala. Aug. 10, 1998) (holding that Alabama's sales and use tax on diesel fuel did not violate the 4-R Act).

Following the parties' submission of briefs and a hearing on March 14, the court[8] denied Norfolk's motion for preliminary injunction, concluding that Norfolk was unlikely to succeed on the merits of its claim. *See Norfolk S. Ry. v. Ala. Dep't of Revenue*, Civil Action No. 2:08-cv-00285-HGD, slip op. at 33 (N.D. Ala. Apr. 9, 2008). The court found that:

> the other taxes imposed on motor carriers and water carriers, such as excise taxes and motor fuel taxes should be considered [but] the use to which tax revenues are put should not be considered. This is because the State has [an] obligation to maintain public rights of way and must determine some way to fund that obligation, and the State cannot maintain the rails because they are private property.

*Id*. at 25. The court further held that "the sales and use tax paid by rail carriers is not discriminatory" because "[r]ail carriers do not pay a disproportionate amount of taxes

---

[8] The parties agreed pursuant to 28 U.S.C. § 636(c)(1) and FED. R. CIV. P. 73 to the exercise of jurisdiction by a federal magistrate judge.

in comparison to their direct competitors." *Id*. at 32. As "the overall tax scheme results in roughly equal treatment of all these carriers," Alabama "does not put rail carriers at an overall competitive disadvantage," considering that intrastate water carriers must pay the same sales and use tax and motor carriers must pay the various motor fuel excise taxes. *Id*.

Norfolk now brings this interlocutory appeal, in accordance with 28 U.S.C. § 1292(a)(1),[9] from the denial of its application for a preliminary injunction.

**IV**

The Court reviews trial court denials of preliminary injunctions under the abuse of discretion standard. *Johnston v. Tampa Sports Auth*., 530 F.3d 1320, 1324 (11th Cir. 2008) (per curiam). Accordingly, the Court reviews the trial court's findings of fact for clear error and its conclusions of law *de novo*. *Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc.,* 304 F.3d 1167, 1171-72 (11th Cir. 2002).

---

[9] 28 U.S.C. § 1292(a)(1) reads that "the courts of appeals shall have jurisdiction of appeals from . . . [i]nterlocutory orders of the district courts of the United States . . . granting, continuing, modifying, refusing or dissolving injunctions."

# V

Our review, of course, must focus on Norfolk's specific claim that the *exemptions* for motor and water carriers from the Alabama fuel sales and use tax on diesel fuel are discriminatory in violation of the 4-R Act. Significantly, Norfolk does not complain that it must pay a different rate of tax on diesel fuel than other Alabama taxpayers. Instead, Norfolk argues that the district court erred by expanding its review to include consideration of Alabama's motor fuel excise and gasoline taxes, and that in determining whether a state tax discriminates against railroads, a court may look only to the challenged sales and use tax on diesel fuel itself and may not consider motor carriers' payment of the motor fuel excise and gasoline taxes.

Norfolk's legal analysis is, in part, correct, as explained below. Nonetheless, under the 4-R Act, as interpreted and applied by the Supreme Court, a state remains free to exempt certain transactions or entities from generally applicable taxes, such as the sales and use tax at issue here, as long as the state does not target railroads for discriminatory treatment. Thus, because we agree with the district court's ultimate conclusion that Norfolk cannot succeed on the merits of its underlying action, we affirm the district court's order denying Norfolk a preliminary injunction.[10]

_____

[10] Because we find a preliminary injunction unwarranted, as we affirm the district court's legal conclusion that Norfolk had no likelihood of success on the merits in this case, we need not address either (1) the power of the district court to award an injunction under 49 U.S.C. § 11501(c) where plaintiffs have not affirmatively proven, in accordance with that statute, that "the

## A. *ACF Industries* **applies to this case**

Although neither party briefed *ACF Industries* in depth, we find this 1994 U.S. Supreme Court decision regarding ad valorem tax exemptions determinative of Norfolk's appeal. In *ACF Industries*, the Supreme Court held that "a State may grant exemptions from a generally applicable ad valorem property tax without subjecting the taxation of railroad property to challenge under the [4-R Act, § 11501(b)(4)]." *Dep't of Revenue v. ACF Indus., Inc.*, 510 U.S. 332, 335 (1994). The Court concluded that section 11501 "does not limit the States' discretion to exempt nonrailroad property, but not railroad property, from ad valorem property taxes of general application." *Id.* at 347-48.

The company in *ACF Industries* challenged Oregon's ad valorem tax on real and personal property on the ground that Oregon exempted various classes of goods from

---

ratio of assessed value to true market value of rail transportation property exceeds by at least 5 percent the ratio of assessed value to true market value of other commercial and industrial property in the same assessment jurisdiction," or (2) the correct equitable standard for a district court to apply in awarding an injunction pursuant to subsection (c) in light of the U.S. Supreme Court's decisions in *Winter v. NRDC, Inc.*, No. 07-1239, 2008 U.S. LEXIS 8343, at * 24, *30 (U.S. Nov. 12, 2008) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. . . . A preliminary injunction is an extraordinary remedy never awarded as of right") and *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (in order to warrant injunctive relief, "[a] plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction").

the tax, including motor vehicles, and instead charged such businesses a "modest annual registration fee." *Id*. at 335. Oregon thus "exempt[ed] certain classes of commercial and industrial property while taxing railroad cars in full." *Id*. at 337.

The Supreme Court analyzed the challenged tax under section (b)(4) for discrimination. *Id*. at 335. Because, under the 4-R Act's plain language, sections (b)(1)-(3) did not contemplate outlawing exemptions from generally applicable property taxes, the Court reasoned, (b)(4) could not either -- "Congress placed exempt property beyond the reach of subsections (b)(1)-(3) [and therefore it would be] illogical to conclude that Congress . . . would turn around and nullify its own choice in subsection (b)(4)." *Id*. at 343.[11]

---

[11] In particular, the Supreme Court concluded:

Subsections (b)(1)-(3) of § [11501] . . . forbid the imposition of higher property tax rates and assessment ratios upon "rail transportation property" than upon "other commercial and industrial property." "Commercial and industrial property," which serves as the comparison class for measuring unlawful discrimination under those provisions, is defined as "property, other than transportation property and land used primarily for agricultural purposes or timber growing, devoted to a commercial or industrial use and subject to a property tax levy." § [11501](a)(4). . . .

The statute does not define [the phrase "subject to a property tax levy"], which on its face could bear one of two interpretations: (1) taxed property; or (2) taxable property, a broader category consisting of the general mass of property within the State's jurisdiction and power to tax, including property that enjoys a current exemption . . . .

In the context of this provision, which concerns the differential assessment of taxed property, the words "property subject to a property tax levy" must mean "taxed property." Given the "normal rule of statutory construction" that "identical

-14-

In *ACF Industries*, the Supreme Court primarily relied upon the plain language and structure of the 4-R Act, but "[o]ther considerations" buttressed its analysis. *Id*. at 343. First, the Court noted that the 4-R Act, while specifically addressing other types of discriminatory taxes, "does not speak with any degree of particularity to the question of tax exemptions." *Id*. Congress could clearly have prohibited such exemptions, but did not. *Id*. at 344. Second, the Court emphasized the traditional power of the states in providing exemptions from property taxes as "an important aspect of state and local tax policy." *Id*. Indeed, "[i]t was common at the time §[11501] was drafted, as it is now, for States with generally applicable ad valorem property taxes to exempt various classes of commercial property." *Id*. Congress's

words used in different parts of the same act are intended to have the same meaning," that phrase must carry the same meaning in subsection (a)(4), where it qualifies the definition of "commercial and industrial property." . . .

[Thus,] the definition of "commercial and industrial property" excludes property that is exempt. Exempt property, then, is not part of the comparison class against which discrimination is measured under subsections (b)(1)-(3), and it follows that railroads may not challenge property tax exemptions under those provisions. . . .

[W]e must pay heed to the fact that Congress placed exempt property beyond the reach of subsections (b)(1)-(3). It would be illogical to conclude that Congress, having allowed the States to grant property tax exemptions in subsections (b)(1)-(3), would turn around and nullify its own choice in subsection (b)(4). So [a contrary] reading of subsection (b)(4), while plausible when viewed in isolation, is untenable in light of § [11501] as a whole. . . . The structure of § [11501] . . . warrants the conclusion that subsection (b)(4) does not limit state discretion to levy a tax upon railroad property while exempting various classes of nonrailroad property.

*Id*. at 340-43 (citations, internal quotation marks, and footnote omitted).

"silence on the subject . . . reflects a determination to permit the States to leave their exemptions in place." *Id*. Third, the Court determined that "principles of federalism" in fact compelled its reading of the 4-R Act, because "[w]hen determining the breadth of a federal statute that impinges upon or pre-empts the States' traditional powers, [the Court is] hesitant to extend the statute beyond its evident scope." *Id*. at 345. *See also Carmichael v. S. Coal & Coke Co.*, 301 U.S. 495, 509 (1937) ("[i]t is inherent in the exercise of the power to tax that a state be free to select the subjects of taxation and to grant exemptions.").

The Supreme Court did acknowledge, however, that a case in which "the railroads -- either alone or as part of some isolated and targeted group -- are the only commercial entities subject to an ad valorem property tax" could call into question whether the state had really "exempted" other commercial entities and could indicate a 4-R Act violation. *ACF Indus.*, 510 U.S. at 346-47. Nonetheless, as a result of *ACF Industries*, while the 4-R Act prohibits the imposition of discriminatory property tax rates, the Act does not prevent a state from exempting other commercial entities from such taxes and leaving taxes on railroads in place, so long as the railroad is not targeted.[12]

---

[12] Although the conclusion seems "anomalous," within the context of the 4-R Act as a whole, the result is not "so bizarre that Congress 'could not have intended' it." *Id*. at 346-47 (quoting *Demarest v. Manspeaker*, 498 U.S. 184, 191 (1991)).

While in Norfolk's case we are dealing with exemptions to a sales and use tax, rather than an ad valorem tax as in *ACF Industries*, the Supreme Court's analysis is equally applicable. Therefore, *ACF Industries*' construction of the 4-R Act guides our decision. First, as with the ad valorem property taxes challenged in *ACF Industries*, there is nothing in the 4-R Act's plain language that indicates an intent to reach exemptions from generally applicable sales and use taxes. The language of section (b)(4) prohibits a discriminatory "tax" not a discriminatory tax exemption. Second, the Supreme Court did not limit its conclusion – that the 4-R Act "does not speak with any degree of particularity to the question of tax exemptions" – to ad valorem property taxes; its conclusion therefore has direct application to the issue presented here. Third, as with property tax exemptions, sales and use tax exemptions were ubiquitous at the time the 4-R Act was drafted, and thus benefit from the same presumption that Congress' silence reflects a determination to leave such exemptions in place.[13]

---

[13] In 1976 and before, most states exempted various entities and goods from sales taxes. *See* JOHN F. DUE & JOHN L. MIKESELL, SALES TAXATION: STATE AND LOCAL STRUCTURE AND ADMINISTRATION 50-82 (The Johns Hopkins University Press 1983) (describing historically common state sales tax exemptions, including exemptions for consumables, industrial fuel and machinery, agricultural goods, and food and other necessities, in addition to exemptions for charities and governmental entities); George B. Brabson, *Analysis of Sales and Use Tax Exemptions – With Comment as to More Uniform Applications*, 9 VAND. L. REV. 294, 294, 308-15 (1956) (describing sales tax exemptions for governmental entities and interstate sales transactions, as well as exemptions "created out of governmental taxing policies or social economic considerations"; in particular, as of 1956, Alabama "granted nine broad areas of exemption [from its sales and use tax], including farm products, farming tools, implements and fertilizer, newsprint, textbooks, tobacco products, motor fuels, and foodstuffs"). *See also* ADVISORY COMMISSION ON INTERGOVERNMENTAL RELATIONS, SIGNIFICANT FEATURES OF

Finally, concerns for state sovereignty are just as keen. We accordingly join other courts that also have applied the *ACF Industries'* analysis to state and local taxes analogous to Alabama's sales and use tax on diesel fuel.[14]

We recognize that some courts post-1994 appear to have ignored *ACF Industries*, and have instead scrutinized exceptions to generally applicable *non-property* taxes.[15] However, as these decisions do not even discuss *ACF Industries* or its influence on their analyses, we do not find them persuasive. In addition, these cases conflict with pre-1994 cases that have applied a similar analysis to that in *ACF Industries* to non-property taxes. *See, e.g.*, *Burlington N. R.R. v. City of Superior*, 932

FISCAL FEDERALISM: 1976-77 EDITION, VOL. II REVENUE AND DEBT 185 (1976), *available at* http://www.library.unt.edu/gpo/acir/SFFF/SFFF-1976-1977-V2.pdf (showing that 37 states exempted medicines and 22 exempted food from sales tax); ADVISORY COMMISSION ON INTERGOVERNMENTAL RELATIONS, STATE LEGISLATIVE PROGRAM, VOL. 3 STATE AND LOCAL REVENUES 104 (1975), *available at* http://www.library.unt.edu/gpo/acir/Reports/information/m-94.pdf (stating that "many states" provided sales tax exemptions for "food, drug, and other commodities"); Carroll H. Sierk, *State Tax Exemptions of Non-Profit Organizations*, 19 CLEV. ST. L. REV. 281, 282 (1970).

[14] *See, e.g., Atchison, Topeka & Santa Fe Ry. v. Arizona*, 78 F.3d 438, 442-44 (9th Cir. 1996), *cert. denied*, 519 U.S. 1029 (1996) (exemptions for transaction privileges and use taxes); *Reg'l Disposal Co. v. City of Centralia*, 51 P.3d 81, 83 (Wash. 2002) (tax on solid waste transfer); *Dep't of Revenue v. Durango & Silverton Narrow Gauge R.R.*, 989 P.2d 208, 215-16 (Colo. App. 1999) (tourism taxes); *Burlington N. Santa Fe Ry. v. Monroe*, Civil Action No. 97-D-1754-N, slip op. at 21-24 (M.D. Ala. Aug. 10, 1998). *See also Burlington N. & Santa Fe Ry. v. Atwood*, 271 F. Supp. 2d 1359, 1367 (D. Wyo. 2003) (coal transportation tax).

[15] *See, e.g.*, *CSX Transp., Inc. v. Ala. Dep't of Revenue*, Civil Action No. 2:08-cv-00655-UWC, slip op. at 7 (N.D. Ala. July 8, 2008); *Union Pac. R.R. v. Minn. Dep't of Revenue*, 507 F.3d 693, 695-96 (8th Cir. 2007); *Ka. City S. Ry. v. Bridges*, No. 04-2547, 2007 U.S. Dist. LEXIS 23477, at *16-25 (W.D. La. Mar. 30, 2007); *Burlington N. R.R. v. Comm'r of Revenue*, 606 N.W.2d 54, 58-59 (Minn. 2000); *Burlington N., Santa Fe Ry. v. Lohman*, 193 F.3d 984, 985-86 (8th Cir. 1999), *cert. denied*, 529 U.S. 1098 (2000).

F.2d 1185, 1187-88 (7th Cir. 1991); *Ka. City S. Ry. v. McNamara*, 817 F.2d 368, 374-78 (5th Cir. 1987).

Therefore, we hold that *ACF Industries* controls our analysis, and dictates that the Alabama tax statute at issue, with its exemptions for motor and water carriers, does not offend the 4-R Act so long as the tax is generally applicable and does not target railroads within Alabama.

## B. Alabama's sales and use tax on fuel is generally applicable and does not target railroads

The sales and use tax at issue in this case qualifies as generally applicable, and thus does not discriminate against railroads in violation of the 4-R Act. Alabama levies its four percent sales tax "[u]pon every person, firm, or corporation . . . engaged . . . in the business of selling at retail any tangible personal property whatsoever," ALA. CODE § 40-23-2(1), and its four percent use tax "on the storage, use or other consumption in this state of tangible personal property." *Id.* § 40-23-61(a).

Simply because Alabama exempts interstate water carriers as well as some motor carriers does not transform the assessment into a discriminatory tax. Although a tax with widespread exemptions could indicate that a state has "single[d] out" the railroad for discriminatory treatment, that is not the case here. *ACF Indus.*, 510 U.S. at 347. Alabama exempts from the sales and use tax various types of goods and entities. *See* ALA. CODE §§ 40-23-4 to -5, -62. Specifically, the Alabama tax code

-19-

exempts sales and use tax on diesel fuel as to motor carriers; interstate shippers; state, county, and municipal entities; county and city school boards; certain charitable organizations; commercial fishing vessels; fuel for kiln use in manufacturing plants; fuel for off-highway agricultural uses; fuel for off-shore resource exploration; and fuel temporarily brought into Alabama by a non-resident for personal use. *See id.* However, all other entities are subject to the tax on diesel fuel, including intrastate water carriers and motor carriers that have not paid the motor fuel excise tax. On the record before the court, Alabama's sales and use tax does not target or single out railroads.

Our conclusion is consistent with previous case law in other jurisdictions. Generally, cases that have applied *ACF Industries* or similar analyses, and have found taxes to target the railway industry, have involved taxes levied almost exclusively upon railroads.[16] In contrast, taxes more like the tax at issue in this case, where a state

_____

[16] *See, e.g., Burlington N. & Santa Fe Ry. v. Atwood*, 271 F. Supp. 2d 1359, 1363, 1367 (D. Wyo. 2003) (holding that Wyoming's Coal Transportation Tax , although generally applicable, singled out railroads because they were liable for more than 99% of the total tax); *Reg'l Disposal Co. v. City of Centralia*, 51 P.3d 81, 83 (Wash. 2002) (holding the tax on solid waste transfer targeted railroads, as it taxed an activity only engaged in by railroads); *Dep't of Revenue v. Durango & Silverton Narrow Gauge R.R.*, 989 P.2d 208, 215-16 (Colo. App. 1999) (holding the tourism taxes discriminatory because they taxed only a very small group of taxpayers, of which railroads were a part); *Burlington N. R.R. v. Huddleston*, 94 F.3d 1413, 1417 (10th Cir. 1996) (finding a 4-R Act violation when state law exempted all entities except a very "narrow group" of taxpayers, including railroads, from tax on personal property); *Burlington N. R.R. v. Bair*, 60 F.3d 410, 413 (8th Cir. 1995), *cert. denied*, 516 U.S. 1113 (1996) (finding discrimination when a state tax singled out for taxation all personal property of railroads while leaving untaxed most personal property of other taxpayers); *Ogilvie v. State Bd. of Equalization*,

taxes railroads along with many other businesses, but exempts certain discrete industries, have been found to be generally applicable and thus not discriminatory.[17]

Although we conclude that Alabama's sales and use tax on fuel is generally applicable and does not target railroads, Norfolk raises one additional argument that we must address. Norfolk attempts to claim that the Alabama tax structure singles out

893 F. Supp. 882, 886 (D. N.D. 1995) (holding that state targeted railroads "under the pretext of broad exemptions" - only four industries, including railroads, paid the tax); *Burlington N. R.R. v. City of Superior*, 932 F.2d 1185, 1187-88 (7th Cir. 1991) (holding that the occupational tax on iron ore concentrates docks, though generally applicable, in effect applied only to docks owned by one particular rail carrier and thus illegally targeted it); *Ka. City S. Ry. v. McNamara*, 817 F.2d 368, 370, 374-78 (5th Cir. 1987) (holding that the class of taxpayers, only transportation and communication utilities, was unnecessarily small to be generally applicable); *Burlington N. R.R. v. Bair*, 766 F.2d 1222, 1224 (8th Cir. 1985) (finding 4-R Act discrimination when a roll back and credit scheme had the effect of exempting 95% of personal property owners from taxation).

[17] *See, e.g., ACF Indus.*, 510 U.S. at 346-48 (finding no discrimination when a generally applicable property tax exempted many other industries); *Burlington N. & Santa Fe Ry. v. State Tax Comm'n*, 188 F.3d 1039, 1042 (8th Cir. 1999) (comparing "general application" category to "exempt" category, and finding that a personal property tax as applied to rolling stock that exempts property in transit through the state did not violate the 4-R Act); *Burlington N. Santa Fe Ry. v. Monroe*, Civil Action No. 97-D-1754-N, slip op. at 21-22 (M.D. Ala. Aug. 10, 1998); *Atchison, Topeka & Santa Fe Ry. v. Arizona*, 78 F.3d 438, 442-44 (9th Cir. 1996), *cert. denied*, 519 U.S. 1029 (1996) (holding that exemptions for motor carriers from the transaction privileges and use taxes did not violate the 4-R Act - the tax was imposed upon 17 classifications of business activities and encompassed over 140,000 taxpayers); *Duluth, Missabe & Iron Range Ry. v. Wisconsin*, 100 F.3d 69, 71 n.2 (7th Cir. 1996) (holding that generally applicable ad valorem taxes analogous to *ACF Industries* not discriminatory); *Union Carbide Corp. v. Bd. of Tax Comm'rs*, 69 F.3d 1356, 1359 (7th Cir. 1995) (same); *Burlington N. R.R. v. Wisc. Dep't of Revenue*, 59 F.3d 55, 57-58 (7th Cir. 1995) (holding that even a tax that exempted 80% of non-railroad commercial and industrial property from generally applicable ad valorem property tax did not violate the 4-R Act); *CSX Transp., Inc. v. Tenn. State Bd. of Equalization*, 801 F. Supp. 28, 35 (M.D. Tenn. 1992) (holding that generally applicable ad valorem taxes analogous to *ACF Industries* not discriminatory).

railroads, because Alabama uses the proceeds of the taxes levied on motor carriers to maintain roads and railroads do not receive similar subsidies in violation of *West Lynn Creamery, Inc. v. Healy*, 512 U.S. 186 (1994). In *West Lynn*, the Supreme Court held that the discriminatory effects of a tax or other payment to the state cannot be analyzed without taking into account "the use to which payments are put." *Id*. at 201. *West Lynn*, however, involved a direct subsidy to in-state producers, rather than an alleged indirect subsidy such as that at issue here. *Id*. at 191. Furthermore, the Supreme Court disapproved of the subsidy because it constituted an unlawful burden *against interstate commerce*. *Id*. at 199 ("A pure subsidy funded out of general revenue ordinarily imposes no burden on interstate commerce, but merely assists local business. The pricing order in this case, however, is funded principally from taxes on the sale of milk produced in other States. By so funding the subsidy, respondent not only assists local farmers, but burdens interstate commerce." (footnote omitted)). Although Congress grounded its implementation of the 4-R Act in U.S. CONST. art. I, § 8, cl. 3, *see Pittsburgh & Lake Erie R.R. v. Ry. Labor Executives' Ass'n*, 491 U.S. 490, 510-11 (1989), our analysis in this case is limited to the specific statutory language of the 4-R Act, rather than the scope of the Commerce Clause. *See Ka. City S. Ry. v. McNamara*, 817 F.2d 368, 376 (5th Cir. 1987) ("Although it may be helpful in analyzing some aspects of the problem, Commerce Clause doctrine does not answer

the questions posed by the 4-R Act.").

It follows that we find Norfolk's arguments unpersuasive. We will not compare the sales and use tax to the fuel excise tax, insofar as there are differences in the ways in which their respective proceeds are spent. First, in line with the majority of other jurisdictions, and as Norfolk itself urges, we decline to look past the particular tax at issue to analyze the overall state tax structure.[18] Second, we believe that the use to which a state puts its tax revenue is irrelevant to the issue of 4-R Act discrimination. *See Atchison, Topeka & Santa Fe Ry.*, 78 F.3d at 443; *Trailer Train v. State Tax Comm'n*, 929 F.2d at 1303. The 4-R Act itself "has its roots in equity practice, in principles of federalism, and in recognition of the imperative need of a State to administer its own fiscal operations." *Tully v. Griffin, Inc.*, 429 U.S. 68, 73 (1976).

---

[18] *See, e.g., Burlington N. R.R. v. City of Superior*, 932 F.2d 1185, 1187-88 (7th Cir. 1991); *Gen. Am. Transp. Corp. v. Limbach*, No. C-2-85-1603, 1987 U.S. Dist. LEXIS 13362, at *33-34 (S.D. Ohio Dec. 28, 1987); *Gen. Am. Transp. Corp. v. Kentucky*, 791 F.2d 38, 41-42 (6th Cir 1986); *McNamara*, 817 F.2d at 376-78; *Ala. Great S. R.R. v. Eagerton*, 541 F. Supp. 1084, 1086 (M.D. Ala. 1982). Earlier cases applied the analysis that Norfolk advocates. *See Burlington N. R.R. v. Triplett*, 682 F. Supp. 443, 445-46 (D. Minn. 1988) (holding that railroads had a competitive disadvantage: "the fuel tax paid by trucks is dedicated to the trucks' roadbeds [whereas] the railroads must pay the fuel tax in addition to paying for their tracks", and barges and airplanes, which pay the same tax rate as railroads, "do not have to maintain their right-of-ways"); *Atchison, Topeka & Santa Fe Ry. v. Bair*, 338 N.W.2d 338, 347 (Iowa 1983), *cert. denied*, 465 U.S. 1071 (1984). However, the Eighth Circuit has overruled *Triplett* in *Trailer Train Co. v. State Tax Comm'n*, 929 F.2d 1300, 1303 (8th Cir. 1991), *cert. denied*, 502 U.S. 856 (1991). In *Trailer Train*, the court definitively held that "the use of the proceeds of a tax has no bearing on the question of whether the tax is discriminatory" under the 4-R Act. *Trailer Train*, 929 F.2d at 1303. Other courts have followed suit. *See, e.g., Atchison, Topeka & Santa Fe Ry. v. Arizona*, 78 F.3d 438, 443 (9th Cir. 1996), *cert. denied*, 519 U.S. 1029 (1996) ("The 4-R Act reaches only tax burdens and not tax benefits"); *Burlington N. R.R. v. Comm'r of Revenue*, 606 N.W.2d 54, 60 (Minn. 2000).

Alabama must pay for the creation, maintenance, and repair of its roads, and must, in some fashion, obtain funds for such creation, maintenance, and repair. But Alabama has no constitutional discretion to allocate funds to private property. *See* ALA. CONST. art. IV, § 93 ("The state shall not engage in works of internal improvement, nor lend money or its credit in aid of such . . . ; nor shall the state be interested in any private or corporate enterprise, or lend money or its credit to any individual, association, or corporation."). Furthermore, Alabama maintains the roads for the public good and not for the benefit of motor carriers; motor carriers only tangentially benefit from the public roads. The ownership and maintenance of its rights-of-way, with both the costs and benefits associated with such ownership, merely constitute part of Norfolk's cost of doing business as a railroad, and do not indicate discrimination as to Norfolk or other railway companies.

Accordingly, we conclude that Norfolk would not succeed on the merits of its case. Consequently, we also conclude that the district court did not abuse its discretion in denying the preliminary injunction, and the district court's denial of the preliminary injunction is

**AFFIRMED**.