COX, Circuit Judge,
dissenting:
I dissent. Though I agree that the appropriate comparison class consists of the stipulated competitors, I do not agree that a tax exemption for interstate motor carriers discriminates against interstate rail carriers when motor carriers in fact carry a similar or heavier tax burden for pur *872 chase of the same commodity. As for the tax exemption for interstate water carriers, I conclude that the district court improperly placed the burden on CSX to provide evidence of the exemption’s discriminatory effect. I would affirm the district court’s ruling to the extent that it finds no violation of the 4-R Act with respect to the motor carriers’ exemption but remand for reconsideration as to interstate water carriers.
The Railroad Revitalization and Regulatory Reform Act of 1976 (the 4-R Act) prohibits a state taxing authority from taking certain actions that place unfair burdens on railroads. The statute’s first three subsections bar a state from making unfair assessments on railroad property, collecting a tax on such unfair assessments, and collecting an ad valorem property tax at a rate greater than that imposed on other “commercial and industrial property,” 49 U.S.C. § llSOKbXIHS).[1] At issue in this case is § 11501(b)(4), which prohibits a state and its subdivisions from “[i]mpos[ing] another tax that discriminates against a rail carrier.” Id. § 11501(b)(4).
We use a two-step inquiry to evaluate a claim of discrimination in violation of § 11501(b)(4). See CSX Transp., Inc. v. Ala. Dep’t of Revenue, — U.S. -, 131 S.Ct. 1101, 1109 n. 8, 179 L.Ed.2d 37 (2011) (CSX II). The plaintiff railroad (CSX here) has the initial burden to establish a prima facie case of discriminatory tax treatment. If the plaintiff does so, the burden shifts to the defendant taxing authority (the State here) to establish that the differential tax treatment is justified and does not discriminate against the railroad. Id. (“Whether the railroad will prevail — that is, whether it can prove the alleged discrimination' — depends on whether the State offers a sufficient justification for declining to provide the exemption at issue to rail carriers.”). If the defendant cannot meet its burden, the tax treatment violates § 11501(b)(4).
The parties in this case have agreed that CSX’s competitors are interstate motor carriers (“on-highway motor carriers of property in interstate commerce”) and interstate water carriers (“carriers of property in interstate commerce by ships, barges and other vessels”). (Dkt. 63 ¶ 10, at 3.) I proceed through the two-step analysis first with respect to motor carriers and then with respect to water carriers.
A. Motor Carriers
Like the majority, I have no doubt that CSX has established a prima facie § 11501(b)(4) violation by showing that the sales and use taxes apply to rail carriers but exempt motor carriers. (Op. at 869-70.) Where I disagree is in the second step of the analysis: whether the State has justified the differential treatment.
*873 The State explains the exemption by pointing out that motor carriers must pay the 19$ state excise tax per gallon of fuel they purchase. Rail carriers do not pay this tax. According to the State’s argument, the fact that rail carriers are not subject to the excise tax justifies the differential treatment in the sales and use taxes, and the sales and use taxes do not discriminate against rail carriers.
The district court agreed with the State. CSX Transp., Inc. v. Ala. Dep’t of Revenue, 892 F.Supp.2d 1300, 1312-14 (N.D.Ala.2012) (CSX III). The court compared the state sales and use taxes (measured in terms of what rail carriers paid per gallon of fuel, including the 4% tax) to the state motor-fuel excise tax (measured in terms of what motor carriers paid per gallon, including the 19per-gallon tax) assessed from January 2007 to December 2009. Id. at 1313. The court found that “motor carriers actually pa[id] a higher” state tax. Id. Even adding to the comparison the additional sales and use taxes imposed on rail carriers by counties and cities in Alabama, motor carriers and rail carriers paid “substantially similar” taxes during the period in question. Id.[2] And that comparison failed to incorporate the motor-fuel excise taxes assessed by counties and cities on motor carriers, which ranged from l<c to 6$ added to the state excise tax imposed on motor carriers. Id. In sum, the district court found, the taxes paid by rail carriers and motor carriers for fuel was “essentially the same.” Id. Because its findings are not challenged on appeal, I accept them as accurate.
None of these findings are relevant, CSX argues, because the State cannot justify differential treatment by showing that the entities that are exempt from sales and use taxes are subjected to a separate tax not imposed on rail carriers. The majority agrees with CSX’s position. It refuses to compare the two taxes, regardless of the numbers the taxing arrangement yields. (See Op. at 869.) But based on my reading of the Supreme Court’s opinion in CSX II and case law in other circuits, I find this position both unsupported and contrary to Congress’s intent.
CSX’s argument and the majority opinion follow the approach taken by the Eighth Circuit in Union Pacific Railroad Co. v. Minnesota Department of Revenue, 507 F.3d 693 (8th Cir.2007). There, the Eighth Circuit considered Minnesota’s generally applicable sales tax on railroad fuel that exempted two primary competitors (motor carriers and air carriers) because they paid a separate excise tax, see id. at 694 — a scenario nearly identical to the one confronting us here. Based on its earlier opinion in Burlington Northern, Santa Fe Railway Co. v. Lohman, 193 F.3d 984 (8th Cir.1999), the Eighth Circuit refused to consider any other tax as a justification for the facial discrimination. See Union Pac., 507 F.3d at 695 (“[W]e ‘look only at the sales and use tax with respect to fuel to see if discrimination has occurred.’ ” (quoting Lohman, 193 F.3d at 986)).
But as the district court recognized, see CSX III, 892 F.Supp.2d at 1310-11, the Eighth Circuit’s simplistic approach to evaluating challenges under § 11501(b)(4) incorrectly relies on distinguishable case law. Lohman, on which Union Pacific rests, refuses to consider other taxes as justification for facially discriminatory tax treatment. 193 F.3d at 986. The Lohman *874 court relies on two cases for the proposition that the fairness of this tax scheme is “too difficult and expensive to evaluate,” id.: the Fifth Circuit’s opinion in Kansas City Southern Railway Co. v. McNamara, 817 F.2d 368 (5th Cir.1987), and the Eighth Circuit’s own opinion in Trailer Train Co. v. State Tax Commission, 929 F.2d 1300 (8th Cir.1991).[3] But both McNamara and Trailer Train address a materially distinct fact pattern, and their analyses are unsuitable for this case.
In McNamara and Trailer Train, the court considered a different kind of tax — a specific tax that “targeted” railroads for differential treatment,[4] rather than a general tax that exempted railroads’ competitors. In each case, the court decided that the appropriate comparison class consisted of all commercial and industrial taxpayers. In each case, the state argued that the tax did not discriminate against railroads because the state’s tax structure, as a whole, treated railroads similarly to every other commercial and industrial taxpayer. And in each case, the court refused to entertain such a searching, time-consuming, expensive, and impracticable analysis. See Trailer Train, 929 F.2d at 1302-03; McNamara, 817 F.2d at 377-78.
Here, we have a much narrower issue. The appropriate comparison class includes the two stipulated competitors — a far more manageable class than one composed of all commercial and industrial taxpayers in Alabama. And in arguing that a single tax on motor carriers justifies their exemption from another tax, the State does not come close to proposing the massive endeavor that Trailer Train and McNamara refused to undertake. Like the district court, see CSX III, 892 F.Supp.2d at 1310-11, I would distinguish Trailer Train and McNamara on that ground, and I would decline to follow Lohman’s and Union Pacific’s, lead because they rely on those distinguishable cases.
That we must evaluate the State’s justification, despite the Eighth Circuit’s approach, is all the clearer after CSX II. There, the Court conceded that discrimination cases under the 4-R Act will often “raise knotty questions about whether and when dissimilar treatment is adequately justified.” CSX II, 131 S.Ct. at 1114. But as the Court then insisted, “Congress has directed the federal courts to review a railroad’s challenge!,] and ... we would flout the congressional command were we to declare the matter beyond us.” Id.
Perhaps the most compelling reason to depart from the Eighth Circuit’s approach is that, under that approach, we may reach the bizarre holding that a tax discriminates against a rail carrier even though the tax puts the rail carrier at no discernible disadvantage. The majority opinion reaches just that result, concluding that the sales and use taxes discriminate against rail carriers and in favor of motor carriers even though motor carriers pay “essentially the same” tax on their fuel. (See Op. at 869 (refusing to evaluate the comparison between the two taxes “even though in some years ... the State’s taxing arrangement might yield a fair result”).) Under the majority’s approach, the sales and use taxes would discriminate against a rail carrier even if its competitors paid four times as *875 much tax as the rail carrier for the same commodity.
I cannot agree with that approach. Congress created the 4-R Act to stabilize railroads financially. Dep’t of Revenue v. ACF Indus., Inc., 510 U.S. 332, 336, 114 S.Ct. 843, 846, 127 L.Ed.2d 165 (1994). This goal implies that an offending tax must disadvantage railroads; I fail to see how a tax that places rail carriers in the same tax position as their competitors — or a better one — could threaten railroads’ financial stability. So it is clear to me that Congress enacted § 11501(b)(4) to eliminate tax schemes that impose a greater tax burden on railroads than other taxpayers. This purpose is explicit in the first three subsections of § 11501(b), each of which prohibits taxation methods that assess or tax rail carriers’ property at a higher rate than other taxpayers. See § 11501(b)(1)— (3). By outlawing “another tax that discriminates” in the final subsection, Congress specifically targeted taxes that have a similar effect as those referred to in the previous three — placing a greater tax burden on railroads than other taxpayers for the same taxable item or event. In finding discrimination against rail carriers without determining whether rail carriers have actually been disadvantaged, the majority opinion flouts the language of the statute and Congress’s clear intent.
Turning now to the State’s justification, I agree with the district court that the State has met its burden to show that the tax exemption for motor carriers was not discriminatory against railroads.
As I explained above, a tax discriminates against railroads in violation of § 11501(b)(4) if the tax imposes a greater tax burden on railroads than it does on comparable taxpayers. The district court found that rail carriers paid less state tax on fuel than motor carriers during the period in question and that, even adding the local taxes imposed on rail carriers (and without adding local excise taxes paid by motor carriers), rail carriers and motor carriers paid “essentially the same” tax. CSX III, 892 F.Supp.2d at 1313. These factual findings are not challenged on appeal. And I cannot conclude from these findings that railroads have been competitively disadvantaged in any way by the sales and use taxes’ exemptions for motor carriers.[5] I would hold that the State has *876 met its burden to justify the differential treatment and, therefore, that the tax exemption does not discriminate against rail carriers within the meaning of § 11501(b)(4).
B. Water Carriers
The district court held that the sales and use taxes’ exemptions for water carriers did not discriminate against rail carriers in violation of the 4-R Act, in part because CSX “fail[ed] to meet it[s] evidentiary burden of proof.” CSX III, 892 F.Supp.2d at 1316. This conclusion is not entirely unreasonable; after all, the Supreme Court in CSX II did hint that the rail carrier must “prove the alleged discrimination” to prevail. CSX II, 131 S.Ct. at 1109 n. 8 (“Whether the railroad will prevail — that is, whether it can prove the alleged discrimination — depends oh whether the State offers a sufficient justification .... ”).
But the district court required too much of CSX. The rail carrier bringing a § 11501(b)(4) claim can establish its prima facie case simply by showing that the tax in question exempts competitors. See id. at 1108 (noting that a state discriminates against one group of taxpayers by charging them a higher tax rate than another group). It then becomes the state’s burden to show that the tax did not in fact discriminate against the railroad. See id. at 1109 n. 8 (“[WJhether [the railroad] can prove the alleged discrimination[ ]depends on whether the State offers a sufficient justification .... ”).
In requiring more from CSX than a showing that the tax exempts water carriers, the district court muddied the two-step inquiry and applied an incorrect legal standard. When a district court uses the wrong legal standard, we can remand for application of the appropriate standard. See Kearse v. Sec’y, Fla. Dep’t of Corr., 669 F.3d 1197, 1198 (11th Cir.2011). Accordingly, I would remand this case so the district court can apply the correct standard (based on the existing record) and determine whether the State has offered sufficient justification for the tax exemption given to water carriers.

. Section 11501(b)(1) — (3) reads:
(b) The following acts unreasonably burden and discriminate against interstate commerce, and a State, subdivision of a State, or authority acting for a State or subdivision of a State may not do any of them:
(1)Assess rail transportation property at a value that has a higher ratio to the true market value of the rail transportation property than the ratio that the assessed value of other commercial and industrial property in the same assessment jurisdiction has to the trae market value of the other commercial and industrial property-
(2) Levy or collect a tax on an assessment that may not be made under paragraph (1) of this subsection.
(3) Levy or collect an ad valorem property tax on rail transportation property at a tax rate that exceeds the tax rate applicable to commercial and industrial property in the same assessment jurisdiction.

. I assume that sales and use taxes imposed by cities and counties are at issue in this case. Given that CSX named no city or county as a defendant, this assumption may not be true; I hesitate to agree that a city or county can be enjoined from imposing a tax when it has not been named as a party. But even if they can, my conclusion remains the same.

. The majority opinion also applies McNamara and acknowledges Trailer Train. (See Op. at 869-70.)

. In McNamara, Louisiana imposed a tax on “public utilities,” a relatively small group of taxpayers that included railroads. 817 F.2d at 374. Notably, "public utilities” also included certain motor and water carriers. Id. In Trailer Train, Missouri taxed an activity in which only railroads engaged. 929 F.2d at 1302.

. CSX contends that, even if rail carriers face the same tax burden as motor carriers in terms of purchasing and consuming fuel, rail carriers are still disadvantaged because they must maintain their own rights-of-way (tracks) while motor carriers’ rights-of-way (highways) are maintained in part by the excise taxes they pay. CSX argues that the district court's refusal to consider these uneven operating expenses in its comparison to the two taxes, see CSX III, 892 F.Supp.2d at 1314-15, was error because any analysis of relative tax burdens must include an analysis of the tangible benefits received or not received.
I disagree. True, railroads have to maintain their tracks. But that burden is not a tax burden that the 4-R Act prohibits, and no tax affects that burden. Say, for example, that the State eliminated both the motor-fuel excise tax and the motor-carrier exemptions in the sales and use taxes, leaving a system in which rail carriers and motor carriers paid identical 4% taxes on the purchase and use of their fuel. By CSX’s logic, even that totally equal tax scheme would disadvantage railroads in violation of the 4-R Act because railroads have higher overhead expenses. Motor carriers still would not be responsible for maintaining the public highways of Alabama.
The difference in right-of-way maintenance costs has no place in the comparison of tax burdens. That railroads must pay for their own tracks is the inherent burden of operating a transportation network on private rights-of-way. In other words, it is a fundamental competitive disadvantage that railroads face. Congress did not intend the 4-R Act to eliminate all of railroads’ competitive disadvantages, only those created by taxes. And here, the State has shown that the sales *876 and use tax exemptions for motor carriers creates no tax disadvantage for railroads.